566 So.2d 455 (1990)
Mr. & Mrs. Freddie A. HINES
v.
Dr. John BICK and Touro Infirmary.
No. 89-CA-0947.
Court of Appeal of Louisiana, Fourth Circuit.
August 9, 1990.
Rehearing Denied September 19, 1990.
*456 Joel P. Loeffelholz, New Orleans, for plaintiffs/appellants.
Lawrence L. McNamara and Andrew C. Clausen, Adams and Reese, New Orleans, for defendant/appellee, Dr. John Bick.
George E. Cain, Jr. and Peter E. Sperling, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendant/appellee, Touro Infirmary.
Before BARRY and WARD, JJ., and PRESTON H. HUFFT, J. Pro Tem.
BARRY, Judge.
The issue in this medical malpractice action is whether a psychiatrist and hospital are liable for failing to prevent a patient from causing injury or death. Mr. and Mrs. Freddie Hines appeal a summary judgment granted to Dr. John Bick, and a judgment which maintained an exception of no right of action (ex proprio motu) to Touro Infirmary.
In their petition and amended petition Mr. and Mrs. Hines noted that a medical review panel (La.R.S. 40:1299.41 et seq.) denied their claims. Their petition alleges: Mr. Hines was admitted to Touro on June 8, 1982 due to a psychiatric disorder and was under the care of Dr. Bick; Touro and Dr. Bick knew Mr. Hines presented a danger to himself; Mrs. Hines' chart specified no visitors which was ignored by Touro; Dr. Bick recommended Mr. Hines be placed on the M-8 "lock down unit" but did not follow up that recommendation; Dr. Bick left town and was unavailable to treat Mr. Hines on January 20, 1982; Touro allowed Mr. Hines to leave the hospital on January 20, 1982 after which he was charged with a fatal shooting.
Mr. and Mrs. allege Dr. Bick failed to treat Mr. Hines within proper standards, did not place him in a safe environment, and left him unattended or with doctors unfamiliar with his case. They prayed for damages for pain and suffering, mental anguish and distress, plus attorney's fees and costs of Mr. Hines' defense in the criminal action.
Dr. Bick and Touro moved to dismiss or alternatively for summary judgment based on public policy that Mr. Hines could not recover damages as a result of his criminal act.
Dr. Bick submitted documents showing Mr. Hines was charged with first degree murder of Gerald Parker and convicted of manslaughter, plus excerpts from depositions of Dale Harris and Dr. Bick and trial testimony of Ms. Harris and Mr. Hines.
Mr. Hines, a veteran police officer, was voluntarily admitted to Touro for emotional problems on June 9, 1982. He lived with his wife and their children. He had an ongoing relationship with Dale Harris and an illegitimate child with another woman. Prior to Mr. Hines' entering Touro, Ms. Harris tried to end their relationship. Dr. Bick, a psychiatrist, testified he treated Mr. Hines' depression with medication, saw improvement, but recommended that Hines be voluntarily transferred to M-8 ("lock down" unit). Dr. Bick did not note a suicide tendency or a propensity for violence. Dr. Bick claims he had no basis to involuntarily place Mr. Hines in "lock down" and Mr. Hines feared the stigma attached to such a placement.
Dr. Bick testified that Mr. Hines never threatened anyone and saw himself as a non-violent person. He was not a threat to himself or to the public. Although Dr. Bick placed a "no visitor" restriction except for family, Harris testified she continued to visit (by asking to see the other patient in Mr. Hines' room pursuant to Mr. Hines' instructions). Mrs. Hines and Ms. Harris had an altercation at the hospital several days before the fatal shooting. On June 20, 1982 Mr. Hines' family visited and Ms. Harris arrived after the family left. Mr. Hines was angry because Harris was late and they argued. Ms. Harris left the hospital and went to a bar where she invited Gerald Parker to her house.
Mr. Hines testified that he had protested against being placed in a psychiatric ward although Dr. Bick had suggested the move. *457 He walked out of Touro about 11:45 p.m. after the doctor on call for Dr. Bick had told him not to leave, took two guns from his car's trunk and drove to Harris' home. He went inside and followed Harris into the bedroom and saw Parker. Mr. Hines shot and killed Parker and wounded Harris.
Mr. and Mrs. Hines filed a memorandum noting: Dr. Bick's recommendation that Mr. Hines be transferred to M-8 but did nothing further; Dr. Bick ordered Hines have no visitors; Touro took no precaution to stop him from leaving on June 21, 1982. Mr. and Mrs. Hines argue their malpractice case was not based on Hines' criminal acts, but on the defendants' negligence.
The trial court stated the issue was whether a patient can recover from a psychiatrist based on the psychiatrist's failure to prevent a tortious act. In granting summary judgment to Dr. Bick the court relied on Cole v. Taylor, 301 N.W.2d 766 (Iowa 1981) which held that "a patient may not recover in tort from his psychiatrist on a claim that the doctor negligently failed to prevent him from committing murder as a matter of public policy." The trial court held that public policy in Louisiana supported the exception of no right of action against Touro. In its reasons the trial court stated that the notice setting Dr. Bick's summary judgment did not include Touro's motion for summary judgment. The court granted ex proprio motu a no right of action as to Touro.
Mr. and Mrs. Hines emphasize that their petition is not premised on Mr. Hines' criminal act, rather the alleged negligent acts of Dr. Bick and Touro. This appeal primarily concerns whether recovery will be allowed when a patient sues his psychiatrist and hospital for negligence and damages because they did not prevent the patient from causing injury or death to another.

PSYCHIATRIST'S DUTY
Recovery has been allowed under a negligence theory when a mental patient committed suicide, or died, or was severely injured because of the failure of the doctor and/or hospital staff to properly treat and/or supervise the patient. The Louisiana First Circuit reversed a dismissal and allowed recovery by a widow and children of a mental patient who died of exposure on the hospital's grounds. Milton v. State, 293 So.2d 645 (La.App. 1st Cir.1974). The widow of a mental patient stated a cause of action on her wrongful death claim (she did not recover) in which she alleged that the negligent care of the hospital and psychiatrist resulted in her husband's death in a hospital bathtub while he was delusional. Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La.App. 1st Cir.1981), writ denied 404 So.2d 277 (La.1981).
Generally, a person has no duty to prevent another from harming a third party unless a special relationship exists such as that of psychiatrist-patient. Restatement of Torts 2d, § 315 (1965). In the seminal case of Tarasoff v. Regents of the University of California, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334 (1976), the California Supreme Court held that there was a cause of action against a psychotherapist for failure to warn when the psychotherapist determines or should have determined that his patient presents a danger of violence. The therapist has a duty to protect (warning) the potential foreseeable victim. Id.
The "duty to warn" theory does not always lead to recovery from a therapist or hospital for a third party victim injured by a mental patient. The California Supreme Court has limited recovery to specific readily identifiable victims. Thompson v. County of Alameda, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980).
La.R.S. 9:2800.2 reflects that language by providing:
A. When a patient has communicated an immediate threat of physical violence against a clearly identified victim or victims, coupled with the apparent intent and ability to carry out that threat, a psychologist, licensed under R.S. 37:2351-2369, or a psychiatrist, licensed under R.S. 37:1261-1291, treating such patient and exercising reasonable professional judgment, shall not be liable for a breach of confidentiality for warning of such threat or taking precautions to provide *458 protection from the patient's violent behavior.
B. A psychologist's or psychiatrist's duty to warn or to take reasonable precautions to provide protection from violent behavior arises only under the circumstance specified in Subsection A of this Section. This duty shall be discharged by the psychologist or psychiatrist if he makes a reasonable effort to communicate the immediate threat to the potential victim or victims and to notify law enforcement authorities in the vicinity of the patient's or potential victim's residence.
C. No liability or cause of action shall arise against any psychologist or psychiatrist based on an invasion of privacy or breach of confidentiality for any confidence disclosed to a third party in an effort to discharge the duty arising under Subsection A of this Section.
Recovery in Louisiana depends on the facts, the victim and a duty-risk analysis. A third party victim/professional rescuer injured by a mental patient has recovered when the hospital or institution was negligent in its care and supervision of a suicidal patient. The Louisiana Third Circuit affirmed as amended an award to a police chief who was injured while he was subduing a suicidal mental patient who was wading in fifteen feet of water and violently struggled when the officer brought her to safety. Sayes v. Pilgrim Manor Nursing Home Inc., 536 So.2d 705 (La.App. 3rd Cir.1988).
Recovery against a hospital was denied when a schizophrenic mother, who was released seven months earlier, killed her daughter and injured her son. There was no allegation as to hospital negligence by releasing the mother, and the court held that the hospital could not have foreseen the mother's actions. Ross v. Central Louisiana State Hospital, 392 So.2d 698 (La.1980).
Similar reasoning was used by the Louisiana First Circuit when it affirmed summary judgment in favor of the State in the wrongful death claim of a minor whose mother, along with another person, was shot by a mental patient who was discharged from a hospital. Sanchez v. State, Department of HHR, 506 So.2d 777 (La. App. 1st Cir.1987). The court concluded that the mental patient had never threatened his victims or displayed violent tendencies during treatment in two hospitals. Therefore, the hospitals' duty to care for and treat the patient did not include within the ambit of its protection the risk that he would, after release, through his own unanticipated and independent actions injure a third person. Id.
Courts in other jurisdictions have allowed recovery because of injuries caused by mental patients if the therapist could have foreseen the risk engendered by the patient's mental condition. Petersen v. State, 100 Wash.2d 421, 671 P.2d 230 (1983); Semler v. Psychiatric Institute of Washington, D.C., 538 F.2d 121 (4th Cir.1976), cert. denied 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90 (1976); Lipari v. Sears, Roebuck and Co., 497 F.Supp. 185 (D.Neb. 1980).
Courts in some jurisdictions have broadened the scope beyond the ability to identify a potential victim. The Georgia Supreme Court held a privately owned mental hospital liable for the murder of the children's mother (a third party was also killed) by their father who was out of the hospital on an unrestricted weekend pass. Bradley Center Inc. v. Wessner, 250 Ga. 199, 296 S.E.2d 693 (1982). The Court relied on the theory that the hospital failed to exercise reasonable care in the control of the father, a duty owed when a hospital takes charge of a person it knows or should know will likely cause bodily harm to others pursuant to Restatement of Torts 2d § 319 (1965). Id.
The United States Ninth Circuit affirmed liability against V.A. hospital psychiatrists for failure to protect a potential victim (the patient's girlfriend) even though the mentally ill patient made no threats against a particular victim. Jablonski by Pahls v. United States, 712 F.2d 391 (9th Cir.1983). Because of Jablonski's conduct during therapy and his medical record which indicated that he was dangerous and had a violent *459 history toward his wife, the victim's daughter was awarded damages.
The Colorado Supreme Court reviewed a wrongful death action by the widow of a police officer shot by a recently released mental patient. The court held that a staff psychiatrist of a state mental health facility has a legal duty to exercise due care to determine whether any involuntarily committed patient has a propensity for violence and if released would present an unreasonable risk of serious bodily harm. Perreira v. State, 768 P.2d 1198 (Colo.1989).
The Wisconsin Supreme Court discounted the "readily identifiable victim" theory and reversed a judgment on the pleadings in a negligence claim against a psychiatrist by the patient's daughter and her husband (relative to the daughter's medical bills) for damages arising out of an auto accident which occurred while the patient was driving (resulting in the patient's death). Schuster v. Altenberg, 144 Wis.2d 223, 424 N.W.2d 159 (1988). The court held that a psychiatrist's misdiagnosis and/or negligent treatment could be the cause-in-fact of injuries to a patient and to third parties. Id.
The Schuster court held that the issue of causation had to be resolved by the jury along with the issue of the doctor's failure to warn the patient's family of her condition or its dangerous implications because Wisconsin's broad definition of duty encompassed liability for all foreseeable consequences (except as limited for policy reasons). The Wisconsin court held that its negligence law did not preclude a holding that a psychiatrist had a duty to warn third parties or to institute proceedings to commit a dangerous individual for the protection of the patient or the public. Id.
In Schuster the court listed possible policy considerations, which are seen as threads throughout much of the relevant jurisprudence: the injury is too remote from the negligence; the injury is wholly out of proportion to the culpability of the negligent tortfeasor; it appears highly extraordinary that the negligence should have brought about the harm; allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; allowance of recovery would likely open the way for fraudulent claims; allowance of recovery would enter a field that has no sensible or just stopping point; the need to protect confidential patient-therapist communication is great. Id.
An overview of the jurisprudence shows that the results are not consistent. However, the case law does set forth guidelines for doctors to use when considering whether to control a patient or warn potential victims: whether the patient has made threats while in therapy; whether the patient's illness has been correctly diagnosed; whether the patient was treated according to that diagnosis; and whether the patient's guardian is aware of the patient's problems. Comment, From Tarasoff to Bradley: Courts Struggle to Apply the Duty to Control Mental Patients, 14 CUM.L.REV. 165 (1984). See Diamond, Psychiatric Prediction of Dangerousness, 123 U.PA.L.REV. 439 (1974).
The cases which seek to define the scope of a psychiatrist's duty to protect leave questions unanswered. Tarasoff did not clearly define how far the duty would extend. Cases have broadened the scope of duty to persons other than the patient. Comment, Psychotherapists' Duty to Warn: Ten Years after Tarasoff, 15 Golden/Gate U.L.REV. 271 (Summer 1985). Some have focused only on foreseeability, while others have limited the duty to warn to readily identifiable victims. Although the cited cases provide a valuable background on the many considerations inherent in the caselaw, none involved a patient suing his psychiatrist for damages due to his own criminal or negligent actions.
Jurisprudence involving suits by patients is scant. In Cole v. Taylor, 301 N.W.2d at 766, cited by the trial court in its reasons for judgment, the Iowa Supreme Court was faced with whether a patient could recover in tort from her psychiatrist because he negligently failed to prevent her from murdering her ex-husband (for which she was convicted of first degree murder). The patient's current husband joined in the action. The patient asserted three theories of liability: *460 medical malpractice; breach of duty of care by failing to warn the patient's former husband of possible danger under Tarasoff; indemnification if she were held liable for damages. The Supreme Court reversed the trial court and granted the motion to dismiss on public policy grounds. Id.
The Cole court cited to the generalization:
As a general rule, a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party.
(footnote omitted). 1A C.J.S. Actions § 29 (1985), at p. 386. Because the patient's responsibility for her criminal conduct was established by her conviction for murder and her criminal act which she claimed as her damages was an element of recovery, the court held that it would be wrong as a matter of public policy to allow recovery. The husband's claims were similarly barred on public policy grounds. 301 N.W.2d at 766.[1]
In Veverka v. Cash, 318 N.W.2d 447 (Iowa 1982), the Iowa Supreme Court considered whether a man, convicted of five counts of first degree murder based on a felony murder theory with arson as the underlying felony, could sue his former doctor alleging that the doctor's negligent treatment and misdiagnosis resulted in his conviction and imprisonment. The plaintiff argued he was innocent based on proof of diminished capacity.[2] The doctor's motion for partial summary judgment because public policy barred damages flowing from Veverka's conviction and imprisonment was denied and an interlocutory appeal granted. Id.
Veverka sought to distinguish Cole (decided subsequent to the trial court ruling on the public policy issue) because Cole did not dispute her criminal guilt in the subsequent civil suit, but alleged he was innocent of the crimes due to diminished capacity. The court held that arson was a crime of general intent and was not subject to that defense, therefore, the defense was not applicable to a felony murder charge. Because proof of diminished capacity would not establish Veverka's innocence and would provide no basis to avoid the Cole rule, the Iowa Supreme Court reversed the trial court and concluded the doctor was entitled to judgment as a matter of law. Id.
In Glazier v. Lee, 171 Mich.App. 216, 429 N.W.2d 857 (1988), Glazier claimed damages for emotional injuries because he killed his girlfriend and was convicted of manslaughter due to a psychiatrist's negligence. Declaring that Michigan law recognized that a psychiatrist who determines that his patient poses a serious threat of violence to a readily identifiable third party has a duty to use reasonable care to protect the third party against such danger, the court stated that Glazier claimed the psychiatrist owed at least as great a duty to protect his patient from his own criminal acts. Id.
Noting that Michigan courts had applied the legal principle that a court will not aid one who founds his cause of action on an immoral or illegal act, the court concluded that Glazier's claim was barred because his act of voluntary manslaughter was the source of his criminal responsibility and the basis for his civil claim. The court discounted Glazier's argument that his case was distinguishable from Cole because he was convicted only of manslaughter and not of murder and concluded that criminal responsibility was the determining factor. *461 The court reversed the trial court's denial of the motion for summary disposition. Id.
Touro and Dr. Bick argue that a similar public policy prevails in Louisiana which should estop Mr. and Mrs. Hines suit. They cite Meyer v. Stock, 6 Orleans App. 175, 176-177 (1909), which states in pertinent part, quoting Madere v. Succession of Ory, No. 4418:
'Courts, in aid of public policy and the law, will notice irrespective of the pleadings that the controversy submitted for adjudication grows out of illegal purposes and if that illegality be manifested by the record, courts will notice it without plea, leave the parties where they stand and dismiss the suit. Contentions arising in unlawful purposes are not to be brought into the courts of justice.
* * * * * *
[t]he litigants do not come to the court with clean hands, we shall leave them where their conduct has placed them.'
Appellees properly cite Louisiana statutes and articles which specify that public policy does not permit a person to benefit from his own criminal act. C.C. Art. 2315.5 (spouse involved in intentional killing is not entitled to wrongful death damages); C.C. Art. 966 (person involved in killing or attempted killing is unworthy of inheriting); R.S. 22:613(D) (no beneficiary under insurance contract shall receive benefits if judicially determined to be involved in or criminally responsible for killing of insured).

SUMMARY JUDGMENT AND NO RIGHT OF ACTION
Summary judgment is a drastic remedy and should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980). The mover must affirmatively and clearly prove the absence of a genuine issue of material fact. Any doubt must be resolved against summary judgment and in favor of a trial on the merits. Industrial Sand & Abrasives, Inc. v. Louisville & Nashville Railroad Company, 427 So.2d 1152 (La. 1983).
The pleadings, affidavits and documents of the party moving for a summary judgment must be scrutinized closely. Those of the opponent are to be indulgently treated. Barham & Churchill v. Campbell & Associates, 503 So.2d 576 (La.App. 4th Cir. 1987), writ denied 503 So.2d 1018 (La. 1987). Supporting and opposing affidavits must be made on personal knowledge and set forth facts that would be admissible at trial. La.C.C.P. art. 967.
Arguments here focus on whether recovery will be allowed when a plaintiff sues his psychiatrist in negligence and seeks damages because the psychiatrist did not prevent the plaintiff from killing or harming a third person.
Under La.R.S. 9:2800.2 the psychiatrist's duty to warn or take reasonable precautions to protect from violent behavior arises only when a patient has communicated an immediate threat of physical violence against a clearly identified victim or victims. There are no allegations that Mr. Hines ever threatened violence. Nor do Mr. and Mrs. Hines argue that Mr. Hines told Dr. Bick that he would kill or hurt Dale Harris or any other person. Mr. and Mrs. Hines do not allege a predicate which even suggests that Mr. Hines had previously been violent or threatened to harm anyone.
We conclude that summary judgment in favor of Dr. Bick was proper and affirm that judgment.
The exception of no right of action questions the plaintiff's interest to bring the suit or standing. La.C.C.P. art. 927(5). In re Tutorship of Werling, 459 So.2d 758 (La.App. 4th Cir.1984). The exception raises the question of whether a remedy afforded by law can be invoked by a particular plaintiff. It relates specifically to the individual person. Ricard v. State, 544 So.2d 1310 (La.App. 4th Cir.1989).
We reverse the judgment (rendered ex proprio motu) which maintained the exception *462 of no right of action. The question of Touro's liability is remanded for a hearing on its motion for summary judgment.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
PRESTON H. HUFFT, J. Pro Tem., concurs.
PRESTON H. HUFFT, Judge Pro Tem., concurring.
I concur in the granting of the Motion For Summary Judgment filed by Dr. John Bick (see, Cole v. Taylor, 301 N.W.2d 766 (Iowa 1981) and the remand for consideration of the Motion For Summary Judgment filed by Touro Infirmary.
NOTES
[1] Mr. and Mrs. Hines cite Freese v. Lemmon, 210 N.W.2d 576 (Iowa 1973), which involved a suit against a doctor treating a patient for seizures after the patient lost control of his car and struck the victim/plaintiff, and Diehl v. Diehl, 421 N.W.2d 884 (Iowa 1988), which involved a negligence suit by a mother against her fourteen-year old son who was driving, fell asleep at the wheel and caused her injuries. The cases are inapposite.
[2] Veverka also sought damages for burn injuries and physical and mental injuries suffered prior to the fire. The right to those damages was not at issue in that appeal. The argument as to issue preclusion relative to Veverka's guilt or innocence already decided in the criminal conviction and affirmed on appeal was not relevant to this discussion and was not reached on the merits by the Iowa Supreme Court due to its other conclusions.