735 So.2d 775 (1999)
Louis GUILLIE and Peggy Guillie
v.
COMPREHENSIVE ADDICTION PROGRAMS, INC., Bowling Green Hospital of St. Tammany and ABC Insurance Company.
No. 98-CA-2605.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 1999.
Timothy W. Cerniglia, James H. Colvin Jr., Sharp, Henry, Cerniglia, Colvin & Weaver, New Orleans, Louisiana, Counsel for Plaintiffs/Appellants.
Celeste Brustowicz, David M. Melancon, Bienvenu, Foster, Ryan & O'Bannon, New *776 Orleans, Louisiana, Counsel for Defendant/Appellee.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge CHARLES R. JONES.
PLOTKIN, Judge.
The plaintiffs, Louis and Peggy Guillie seek damages from the defendants, Comprehensive Addiction Programs, Inc., Bowling Green Hospital of St. Tammany, and ABC Insurance Co. The plaintiffs claim that defendants committed malpractice and/or negligence when Louis Guillie was misdiagnosed at their facility and allowed to leave before being properly treated. Upon leaving the hospital, Mr. Guillie stole money from his employer which resulted in his immediate termination. Plaintiffs now seek compensation for their losses. For the following reasons, we affirm the decision of the trial court granting defendants' motion for summary judgment.

FACTS:
Louis Guillie was employed by Majik Market as a district supervisor. He was responsible for overseeing the operations of seven to ten local stores. Including benefits, Mr. Guillie received a salary of approximately $40,000 per year.
Mr. Guillie had a serious problem with alcohol, dating back to at least 1988. Also commencing in 1988, Mr. Guillie participated in family therapy with a certified social worker, Mr. John Mister. The reason for seeking family therapy was because he and his wife were experiencing difficulties with their twin sons. Mr. Mister testified in his deposition that the family was very conflicted and he had individual sessions with Mr. Guillie. He stated that he informed Mr. Guillie that he believed he had a drinking problem and that he suffered from severe depression. Mr. Mister did not specifically recall whether or not he referred Mr. Guillie to a psychiatrist, but stated that he probably did recommend that Mr. Guillie see a psychiatrist since he believed him to be suffering from depression.
In 1993, Mr. Guillie's alcoholic condition worsened, and, he also began to obsessively gamble. His relationship with his wife deteriorated, and, although he was still sporadically counseling with Mr. Mister, she demanded that he seek further professional help for his problems. On September 26, 1993, he sought treatment at Bowling Green Hospital for his alcohol abuse and gambling problem. However, he testified by deposition that he did not want counseling and only went because his wife insisted. Therefore, he checked himself out of the facility within the first twenty-four hours, on September 27, 1993, in order to watch a football game.
Upon arriving home, Mr. Guillie discussed the situation with his wife who insisted that he return to the facility. Again, Mr. Guillie went to Bowling Green on September 28, 1993 and voluntarily readmitted himself. This time he stayed at the hospital until October 3, 1993. In his deposition, Mr. Guillie testified that he participated in group counseling and therapy, but that he still was not willing to admit he had a problem at that point. He was never seen by a psychiatrist during this extended stay at Bowling Green. Throughout the duration of this stay at Bowling Green, the one psychiatrist on staff, Dr. Taylor, was not reporting to work. However, Mr. Guillie testified that he was seen by a physician, Dr. Millet, and by different social workers and therapists. Mr. Guillie left Bowling Green on October 3, 1993 against medical advice. Upon his release, he was given an extensive outpatient therapy regimen, which, according to his medical records, included individual psychiatric counseling with the New Orleans Psychiatric Associates. In his deposition, he testified that he did not seek this prescribed psychiatric care. However, he did go to the group therapy a couple of times, but then he ceased participating.
Once discharged on October 3, 1993, Mr. Guillie immediately returned to work at *777 Majik Market. While he contends he was not drinking, he continued to gamble, and stole approximately $3,500 from his employer to support his habit. Mr. Guillie was fully aware of the consequences of stealing this money because he retained an attorney to address the possibility of criminal charges. The attorney accompanied Mr. Guillie to a meeting he scheduled with his immediate supervisor, Dan Shapiro. At the meeting, Mr. Guillie confessed his theft to Mr. Shapiro who immediately terminated Mr. Guillie.
On October 20, 1993, Mr. Guillie returned again to Bowling Green Hospital. This time he was seen by several psychiatrists, and, one of them, Dr. Wiedorn, diagnosed him as suffering from bipolar disorder. He remained in the hospital and began a proper course of treatment. Upon discharge, Mr. Guillie continued to see Dr. Wiedorn, a board-certified psychiatrist, who testified by deposition that plaintiff was temporarily prescribed lithium and his prognosis was good. He further testified that it was his opinion that Mr. Guillie's problems with alcohol and gambling were symptomatic of his primary underlying problem, manic depression, also known as bipolar disorder. He further testified that in his opinion, had Mr. Guillie been properly diagnosed, he would not have left the hospital and returned to work. However, Mr. Guillie testified that Bowling Green was incapable of keeping him at the hospital against his will. Moreover, Mrs. Guillie testified in her deposition that their insurance would not pay for Mr. Guillie to stay in the hospital any longer, and, therefore, he had to leave the facility on October 3, 1993.
Mr. Guillie alleges that if he was initially diagnosed as bipolar, he would never have been discharged from the hospital, and he never would have returned to work, thus, the hospital was negligent in not having him properly diagnosed by a psychiatrist. He further alleges that the defendants are liable for his loss of employment because if he had been properly treated, he would not have stolen money from Majik Market, and he would not have been terminated from his position. Based on these scenarios, Mr. Guillie seeks damages for his loss of income, both future and present; mental anguish, both past and future; loss of future earning capacity; past and future humiliation; loss of life's enjoyment; and all other general damages. Mrs. Guillie seeks damages for her loss of consortium.

DISCUSSION:
The plaintiffs argue that the trial court erred when it granted the defendants' motion for summary judgment.
Appellate courts review summary judgment decisions de novo. Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 583. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Thus, the premise for granting a motion for summary judgment is determining whether there exists a genuine issue of material fact necessary to have a trial on the merits. However, following the 1996 amendments to LSA-C.C.P. 966, this Court must review this initial determination liberally because summary judgments are now "favored" by the judiciary. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The language of the amendment tracks the language of Rule 56 of the Federal Rules of Civil Procedure, and is designed to allow courts to decide whether there is sufficient evidence to warrant a trial, thus affording judges the opportunity to ferret out meritless litigation. Id.
Defendant's argue that the instant case is analogous to this Court's opinion in Hines v. Bick, 566 So.2d 455 (La.App. 4 Cir.1990), writ denied, 571 So.2d 648 (La. 1990). In that case, a mental patient and his wife brought an action against the patient's *778 psychiatrist and the hospital where he was treated. The issue was whether a psychiatrist and hospital are liable for failing to prevent a patient from causing injury or death. Specifically, Mr. Hines was under the care of Dr. Bick at Touro Hospital. Mr. Hines was in the hospital because he was suffering from emotional problems. He previously lived with his wife and children, but had a long time mistress, Ms. Harris. Dr. Bick instructed the hospital staff that Mr. Hines was to have no visitors. However, Ms. Harris continuously visited Mr. Hines, and when she arrived late for one visit, an argument ensued. Ms. Harris left the hospital and went to a local bar where she made the acquaintance of Mr. Gerald Parker. Once back at Ms. Harris' house, she and Mr. Parker were in her bedroom when Mr. Hines entered the room and fatally shot Mr. Parker and severely injured Ms. Harris.
Mr. Hines sued Dr. Bick and Touro contending that they were responsible for his mental anguish, caused by his murder conviction, because they negligently allowed him to leave the hospital. The trial court granted summary judgment in favor of the psychiatrist. Mr. Hines emphasized that his cause of action was not premised on his illegal act, but rather, was based on the negligence of Dr. Bick and Touro in not properly treating him.
The court engaged in a long discussion about the psychiatrist's duty to warn third parties of potentially dangerous patients. However, unlike the Hines case, Mr. Guillie's alleged damages arise solely from his injury to himself, i.e. losing his job because he stole money, not from any injury to any third party. Therefore, the instant case is distinguishable from Hines. The policy of Hines and all other cases involving the psychiatrist's duty to warn third parties of harm is to protect the innocent third parties, not to allow the offenders to recover for their own criminal conduct. However, the Hines court does clearly state that one cannot recover for his/her own illegal or immoral conduct.
The plaintiff in a negligence cause of action must establish that, (1) the defendant owed him/her a duty to exercise reasonable care; (2) the defendant breached that duty; (3) the breach was the cause-in-fact of the injury; (4) the scope of the duty encompassed the risk of the harm caused; and (5) damages.
In this particular case, defendants did have a duty to use reasonable care when diagnosing Mr. Guillie's mental condition. Moreover, the record establishes that during the time of Mr. Guillie's second hospitalization, he was not seen by a psychiatrist who could have properly diagnosed his condition. Thus, defendants may have breached their duty to properly diagnose Mr. Guillie.
Yet, we are not convinced that the breach of duty by defendants was the cause-in-fact of plaintiff's injury. We recognize that the question of causation is usually an issue for the factfinder's determination, but it is possible to determine this issue on summary judgment if reasonable minds could not differ. Fowler v. Roberts, 556 So.2d 1, 4 (La.1989). In this case, Mr. Guillie's thievery is undoubtedly an intervening cause of his damages. Typically, an intervening cause raises a question of concurrent cause, but it if it is determined that the intervening cause is a superceding intervening cause, the defendant is exonerated. LeBlanc v. Jani-King, Inc., 538 So.2d 1156, 1158 (La.App. 4 Cir.1989), writ denied, 542 So.2d 1390 (La. 1989), cert. denied, 493 U.S. 995, 110 S.Ct. 548, 107 L.Ed.2d 544 (1989). It is the plaintiff's burden to establish that the injuries sustained were not the result of the intervening act. Jenkins v. Lindsey, 97-0492 (La.App. 4 Cir. 4/16/97), 693 So.2d 238, 240; Haydel v. Hercules Transport, Inc., 94-1246 (La.App. 1 Cir. 4/7/95), 654 So.2d 418, 432, writ denied, 95-1172 (La.6/23/95), 656 So.2d 1019; Thomas v. Hartford Insurance Company, 540 So.2d 1068, 1075 (La.App. 1 Cir.1989), writ denied, 542 So.2d 516 (La.1989).
*779 This particular case is unique because the intervening act is the plaintiff's illegal conduct. Generally, a plaintiff is precluded from recovering when his/her claim is based on his/her own illegal or immoral act. Hines, supra at 460-461. "A person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a party." Orzel v. Scott Drug Company, 449 Mich. 550, 557, 537 N.W.2d 208, 212 (1995). This rule categorically denies recovery because courts do not want to aid plaintiffs whose causes of action are based on their own illegal conduct. This would condone and encourage wrongdoing, and allow persons of immoral conscious to profit from their lack of respect for the law.
The facts of this particular case further confuse the issue because there was a probable breach of duty owed by the defendants to the plaintiffs. But, courts still tend to preclude any recovery and often dismiss cases on summary disposition once it is apparent that the cause of action is based on the illegal or immoral conduct of the plaintiff. Hines, supra; Cole v. Taylor, 301 N.W.2d 766 (Iowa 1981); Veverka v. Cash, 318 N.W.2d 447 (Iowa 1982); Glazier v. Lee, 171 Mich.App. 216, 429 N.W.2d 857 (1988). The petition in the instant case alleges that the damages suffered by Mr. Guillie arose after he stole the money. It does not allege that the misdiagnosis caused Mr. Guillie to suffer any injury in the very brief interim between his discharge on October 3, 1993, and the latest possible time he could have stolen money, October 20, 1993. Thus, he has alleged no damages before the superceding intervening event. Strong policy reasons dictate that Mr. Guillie's theft is a superceding intervening cause of his injury as a matter of law; thus, he is precluded from recovering.
Moreover, the policy considerations in this case also preclude Mrs. Guillie from recovering indirect damages based on her husband's criminal act.
For the foregoing reasons, the judgment of the trial court granting defendants' motion for summary judgment is hereby affirmed at appellants' cost.
AFFIRMED.
JONES, J., DISSENTS WITH REASONS.
JONES, J., DISSENTING WITH REASONS.
The majority affirms the trial court's grant of the defendant's Motion for Summary Judgment, finding that Mr. Guillie "... has alleged no damages before the superceding, intervening event." This is in error.
In his petition, Mr. Guillie specifically states that "... as a result of the foregoing, he has suffered the following damages:... (2) mental anguish, both present and future ..." Thus, he does allege damages other than that sustained as a result of his criminal conduct.
Damages alone are sufficient to defeat this Motion for Summary Judgment, because the majority agrees that "... the defendants did have a duty to use reasonable care when diagnosing Mr. Guillie's mental condition ... Thus, the defendants may have breached their duty to properly diagnose Mr. Guillie."
Therefore, for the foregoing reasons, I would reverse the judgment of the trial court granting the defendant's Motion for Summary Judgment.