814 So.2d 124 (2002)
Wendy ROW, Plaintiff-Appellant,
v.
PIERREMONT PLAZA, L.L.C. d/b/a Pierremont Plaza Shopping Center, et al., Defendants-Appellees.
No. 35,796-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
W. James Singleton, Shreveport, for Appellant.
Mayer, Smith & Roberts, by John C. Turnage, Shreveport, for Appellees, Essex Insurance Company and Dominic Cordaro.
Lunn, Irion, Salley, Carlisle & Gardner, by Gerald M. Johnson, Jr., Shreveport, for Appellee, Pierremont Plaza, L.L.C.
Before WILLIAMS, CARAWAY and KOSTELKA, JJ.
CARAWAY, J.
The trial court granted summary judgment based on the defendants' argument that plaintiff's description of her automobile accident demonstrated that the sight obstruction to the intersection allegedly created by defendants was not the cause-in-fact of the accident. Plaintiff's opposition affidavit and brief stated that because she did not understand the deposition questions, she made some inaccurate statements at her deposition. She claims that this opposition affidavit creates a genuine issue of material fact concerning the causation of the accident and seeks reversal. Finding no genuine issue of material fact, we affirm.

*125 Facts

Wendy Row ("Row") brought this action against defendants, Pierremont Plaza Shopping Center, Dominic Cordaro ("Cordaro") and Essex Insurance Company ("Essex"). Row was involved in an automobile accident while exiting a shopping center parking lot.
During the early evening of November 3, 1998, Row was driving her 1997 Pontiac Sunfire and leaving the parking lot of the Pierremont Plaza Shopping Center in Shreveport. It was dark at the time and the vehicle's lights were on. The parking lot is bounded on its north side by East 70th Street, a four-lane road running eastwest. Row drove her car to an exit at the northern edge of the parking lot and stopped, waiting to turn onto E. 70th. She intended to turn left onto East 70th and continue driving westbound. This maneuver would entail crossing both lanes of eastbound traffic. There are no traffic lights or other devices to control the movement of traffic on East 70th at this exit. The evidence indicates that cars proceeding east on East 70th approached the location of Row's car at right angles.
During her deposition, Row testified that she waited for the heavy traffic to subside at the shopping center exit. Looking to her left, she had a difficult time seeing through a pile of brush that had been stacked next to the curb on East 70th. Cordaro owns a restaurant in the shopping center, and evidently, his employees had trimmed some shrubbery that obscured the shopping center signage and placed the cuttings on that portion of the parking lot to the left of the exit Row used. According to the affidavit of another shopping center patron, Cynthia Russell:
On November 3, 1998, I tried to exit the lot located on 70th Street, by turning left, known as Pierremont Plaza Shopping Center. I could not see due to the bushes that were next to (sic) street obstructing the view of oncoming traffic. I eased out and then had to accelerate my vehicle in order to get out because of oncoming traffic. I stated to the passenger with me that with these bushes lying next to the street, this was an accident waiting to happen. The bushes were at least six feet tall. The following day, I observed the bushes being moved.
Row reported that the pile of brush was "probably as high as my car, maybe a little bit lower."
In her deposition, Row testified that a motorist in the outside eastbound lane (the lane closest to her) stopped to the west of the parking lot exit to let her out onto East 70th. Row drove her car out of the parking lot, into the outside eastbound lane. Because Row's deposition is central to the dispute, we quote from it extensively, as follows:
Q: Okay. Do you remember pressing the accelerator on your car from that stopped position to proceed on out into 70th Street; do you remember that?
A: Yes.
Q: Do you remember there being any cars stopped in the lane that you were trying to enter off 70th Street that was closest to the curb as if someone was stopping to let you out?
A: I believeI mean, it's real foggy. I think so.
Q: Were there any street lights in the area?
A: No.
Q: Do you remember anything about a car being stopped in the curbside lane of 70th Street or the driver making any motions for you to come out?
A: I can't really remember. I just remember I think someone was stopped and I inched out a bit.

*126 Q: Okay. Do you know why someone had stopped there?
A: To let me out, I guess.
* * *
Q: Okay. But when that car stopped for you, you began to inch out into 70th Street; correct?
A. Yes.
Q: And before that, no part of the car had broken the plain (sic), so to speak, into 70th Street?
A: Right.
Q: And when you began to inch off, the car in the curbside lane had stopped?
A. Yes.
Q: And was that car that was stopped for you to enter 70th Street, was it obstructing your view of traffic that was coming in the lane right next to it?
A: NoI mean, I still could not really see too well the next lane over.
Q: But my question, is was your difficulty in seeing the next lane over because of the car that was stopped for you or was it because of the trees on the side of the road.
A: The trees.
Q: Okay. So when you were out in front of the car that was stopped in the curbside lane, your testimony is the trees were still obstructing your view of what I call the inside lane?
A: Right.
Mr. Singleton: Let me object to this. Is your question when she was out in front of the car, that means that she had intersected the intersection there? Is that your question? That she had already intersected the intersection or while she was still there inching out? Mr. Johnson: No. I think what my intention was to askand my understanding, Ms. Row, is you've told meand you correct me if I'm wrongbut you told me that you inched out into 70th Street in response to this car in the curbside lane stopping for you.
A: Yes.
Q: Isn't that correct?
A: Yes.
Q: And did you get your car completely out into the curbside lane before you tried to enterstrike that. Did you get your carlet me make sure my terminology is right here.
When I say the car stopped in the curbside lane, I mean just that. The car that's in the lane next to the curb. And sometimes traffic people call that the outside lane
A: Right.
Q:because it's on the outside of the street. The lane right next to that is also an eastbound lane and we call that the inside lane. Do you understand that terminology?
A: Yes.
Q: When you exited the shopping center, you entered the outside lane of 70th Street in response to a car that had stopped for you to do so; correct?
A: Yes.
Q: When you entered, how far into strike that. The collision occurred in the inside lane, correct, or do you remember?
A: Yes.
Q: Is the last thing that you remember the front of your car getting into the inside lane where the impact occurred?
A: The last thing I remember is just trying to get out of the way.
Q: Okay. Did you see the car that ultimately hit you before it hit you?
A: I mean, I saw it, I guess, when it was about to hit me.

*127 * * *
Q: Okay. When you went beyond the outside lane, do you recall anything about how far your car got into the inside lane before the impact occurred?
A: How far my car got in the inside lane?
Q: Yes, Ma'am. If you remember.
A: I can't really recall.
Q: Okay. But at some point during the process before the impact, you would havecorrect me if I'm wrongbut you would have gotten your car to the point where your driver's position would have basically been even with the front end of that car that had stopped for you; correct?
A: I'm not sure. Could you repeat that?
Q: Okay. You're leaving the shopping center, you're inching out.
A: Right.
Q: In response to this fellow who stopped for you in the outside lane?
A: Right.
Q: Your car is moving forward. At some point, you would have gotten to the point where your driver's position was pretty much even with the car that stopped for you?
A: Okay.
Q: Is that correct?
A: Yes.
Q: And at that point, were the tree limbs still obstructing your view of the cars that were coming in the inside lane?
A: Yes, I believe so.
A vehicle traveling in the inside eastbound lane of East 70th collided with the driver's side of Row's car, and seriously injured Row.
On April 18, 2001, all of the defendants filed a motion for summary judgment and included Row's deposition in support thereof. The motion alleged in part that,
[T]he tree limbs were placed in a location such that at the time of impact and in the moments immediately preceding the impact, they were not in the plaintiff's line of sight and (sic) did obstruct her vision of traffic and as such their placement, location, or existence, were not a causative factor in the accident.
Row opposed this motion, and attached Cynthia Russell's affidavit. Row's affidavit was also attached and stated in part:
5. That had it not been for the presence of the cut tree limbs and debris, which obstructed my view of traffic from the west, there would not have been an accident on November 3, 1998.
6. That the tree limbs and debris were placed in such a location that in the moments immediately preceding my entering E. 70th Street, my vision of traffic was obstructed causing me to enter E. 70th Street without seeing the vehicles to my left and creating a sudden emergency.
7. That I did not understand some of the questioning during my incomplete deposition and make this affidavit to correct it.
Further, the affidavit of Dr. Way Johnston, P.E., C.S.P., was attached to Row's opposition. This affidavit contained his opinion about the causes of the accident. Dr. Johnston's qualifications are not clearly delineated in his affidavit, although he asserts that he has "thirty years of experience in human factors and safety engineering," and also indicates that he reviewed, inter alia, numerous depositions (two of which are not included in this record) and photographs of the pile of trees at the accident site (also not included in this record).

*128 Summary Judgment

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Willis v. Medders, 2000-2507 (La.12/08/00), 775 So.2d 1049; Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226; Knowles v. McCright's Pharmacy, Inc., 34,559 (La.App.2d Cir.4/4/01), 785 So.2d 101. Furthermore, as noted by the supreme court in Independent Fire Ins. Co., supra, the trial court cannot make credibility determinations on a motion for summary judgment. It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Additionally, the weighing of conflicting evidence has no place in summary judgment procedure. Smith v. Lynn, 32,093 (La. App.2d Cir.8/18/99), 749 So.2d 692; Harrison v. Parker, 31,844 (La.App.2d Cir. 5/05/99), 737 So.2d 160, writ denied, 99-1597 (La.9/17/99), 747 So.2d 565.
The recent amendments to La. C.C.P. art. 966 track the language of Rule 56 of the Federal Rules of Civil Procedure and the federal jurisprudential pronouncements on that rule and are designed to allow courts to decide whether there is sufficient evidence to warrant a trial, thus affording judges the opportunity to ferret out meritless litigation. Guillie v. Comprehensive Addiction Programs, 98-2605 (La.App. 4th Cir.4/21/99), 735 So.2d 775.

Discussion
Clearly, a factual dispute exists concerning the hazard posed by the pile of brush which blocked Row's sight while she was stopped at the exit and preparing to enter East 70th. Therefore, defendants' argument necessarily concedes that Row's vision was blocked while she was stopped, but asserts that, after Row inched out into the initial outside lane of traffic, the alleged obstruction became immaterial as a causal factor of the accident.
Row counters this view of the accident by insisting that the brush pile was the *129 only factor that caused her to move precariously into the street and that this was established by her opposition affidavit which allegedly shows that the car that stopped in the outside lane of traffic did not stop to let her through the intersection but instead stopped to avoid a collision. Under this view of the accident, her entrance into the intersection is claimed to be a sudden movement instead of the "inching" motion described in her deposition. Finally, in connection with her view of the accident as a sudden emergency caused by the obstruction of the brush pile, we also note that in her brief, Row claims that during her deposition, she "made some inaccurate statements."
In Guillie, supra, the court affirmed a summary judgment noting that there was a probable breach of duty owed by the defendants to the plaintiff's. Nevertheless, the court determined that the defendants' breach of duty was not a cause-in-fact of the injury, citing the following law regarding an intervening cause:
Yet, we are not convinced that the breach of duty by defendants was the cause-in-fact of plaintiff's injury. We recognize that the question of causation is usually an issue for the factfinder's determination, but it is possible to determine this issue on summary judgment if reasonable minds could not differ. Fowler v. Roberts, 556 So.2d 1, 4 (La. 1989). In this case, Mr. Guillie's thievery is undoubtedly an intervening cause of his damages. Typically, an intervening cause raises a question of concurrent cause, but if it is determined that the intervening cause is a superceding intervening cause, the defendant is exonerated. LeBlanc v. Jani-King, Inc., 538 So.2d 1156, 1158 (La.App. 4 Cir.1989), writ denied, 542 So.2d 1390 (La.1989), cert. denied, 493 U.S. 995, 110 S.Ct. 548, 107 L.Ed.2d 544 (1989). It is the plaintiff's burden to establish that the injuries sustained were not the result of the intervening act. Jenkins v. Lindsey, 97-0492 (La.App. 4 Cir. 4/16/97), 693 So.2d 238, 240; Haydel v. Hercules Transport, Inc., 94-1246 (La.App. 1 Cir. 4/7/95), 654 So.2d 418, 432, writ denied, 95-1172 (La.6/23/95), 656 So.2d 1019; Thomas v. Hartford Insurance Company, 540 So.2d 1068, 1075 (La.App. 1 Cir.1989), writ denied, 542 So.2d 516 (La.1989).
In her deposition testimony, Row was the first to state that her car "inched out" into the street in front of the vehicle which had stopped in the outside lane closest to her car. On at least four occasions during her deposition, she consistently described her action as being "in response" to the car that stopped to allow her to exit from the shopping center parking lot and as being a slow movement, "inching" forward into the outside lane in front of the other vehicle. Upon reaching that position in the outside lane, the obstacle to her line of sight to the inside lane would be the car that had stopped and not the brush pile. Her deposition description of a slow "inching" movement into the outside lane establishes that the brush pile had not caused her to pull out suddenly and blindly into the traffic.
Considering Row's description of the accident in her deposition only, we do not find any genuine issue of material fact allowing for the brush pile obstruction as a possible cause-in-fact of the accident. Row's superseding action entering the outside lane of traffic created a new obstacle to her vision which caused the accident. Like the Guillie court, we believe the trial court's grant of summary judgment is correct based upon Row's failure to establish causation in her deposition testimony. In the words of La. C.C.P. art. 966, Row's deposition failed "to produce factual support *130 sufficient to establish that [s]he will be able to satisfy [her] evidentiary burden of proof at trial," so that based on her deposition alone, "there is no genuine issue of material fact."
Nevertheless, Row now suggests that her opposition affidavit provides additional information, changing her perspective on the accident as reflected by her deposition, thus creating a genuine issue of material fact. Our review of the affidavit shows that there is one statement of fact that is directly contrary to Row's deposition testimony. She states that prior to proceeding into the street her "vision of traffic was obstructed causing me to enter E. 70th Street without seeing the vehicles to my left." This indicates that she did not see any car stopped in the outside lane as she entered that lane. Thus, contrary to her report in her deposition, her movement was not "in response" to seeing a stopped car. This contradictory fact leads Row to argue that the vehicle in the outside lane must have been forced to make an emergency stop to avoid hitting Row's car. Likewise, it raises an inference that Row's movement into the street was sudden. Nevertheless, since Row's affidavit does not directly retract her deposition description of the slow, inching movement, the direct evidence of that cautious movement precludes the contrary inference from the non-detailed affidavit.
As set forth above, credibility determinations are not to be made on a motion for summary judgment. A credibility issue, however, raised by two witnesses' contrary views of a material fact is not present here. In this case, the credibility issue concerns Row's own contradictory account of the accident, as reflected by her deposition and by her affidavit. The contradictory statement in her affidavit regarding a single fact partially alters the much more detailed account of the accident contained in her deposition. This unexplained retraction of one of the facts established by the detailed description of her actions in her deposition requires us to consider the meaning of the recent enactment of La. C.C.P. art. 966(C)(2) and its requirement that the party opposing summary judgment "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial."
Because of the similarity between the recent amendments to La. C.C.P. art. 966 and Fed. Rule Civ. P. art. 56, our supreme court has considered the federal jurisprudence interpreting Rule 56 and has adopted the federal courts' more liberal standard for summary judgment. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606 (citing, Hayes v. Autin, 96-287 (La. App. 3d Cir.12/26/96), 685 So.2d 691), writ denied, 97-0281 (La.3/14/97), 690 So.2d 41; Independent Fire Ins. Co., supra. While Rule 56 does not contain the above quoted language of the last sentence of La. C.C.P. art. 966(C)(2), the language of our statute tracks language in the federal jurisprudence. For example, in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the U.S. Supreme Court had occasion to discuss at length the burden placed upon the nonmoving party, as follows:
Our prior decisions may not have uniformly recited the same language in describing genuine factual issues under Rule 56, but it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. As Adickes [v. S.H. Kress & Co.], [398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)], and [First National Bank of Arizona v.] Cities Service, [391 U.S. 253, 88 S.Ct. 1575, 20 *131 L.Ed.2d 569 (1968)], indicate, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Cities Service, supra, 391 U.S., at 288-289, 88 S.Ct., at 1592. If the evidence is merely colorable, Dombrowski v. Eastland, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam), or is not significantly probative, Cities Service, supra, at 290, 88 S.Ct., at 1592, summary judgment may be granted.
* * *
Petitioners suggest, and we agree, that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
* * *
The Court has said that summary judgment should be granted where the evidence is such that it "would require a directed verdict for the moving party." Sartor v. Arkansas Gas Corp., 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944). And we have noted that the "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 2171, n. 11, 76 L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.
The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....
Id. at 249-252, 106 S.Ct. 2505.
Additionally, the federal courts have developed a clear rule for testing the sufficiency of the nonmoving party's evidentiary burden of proof in situations, such as the present one, where a witness's affidavit is offered to contradict her prior deposition. In a recent U.S. Fifth Circuit decision, the court stated:
Similarly, under the federal rules, when the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, we have required an explanation of that conflict. This jurisprudential rule has evolved from cases in which opposing parties had provided the affidavit and the deposition; but it applies equally to situations such as this, when the affidavit contradicts prior sworn testimony by the affiant himself.
Copeland v. Wasserstein, Perella & Co., 278 F.3d 472, 482 (5th Cir.2002). In keeping with this rule, other federal courts have said that "a deposition is the time for the plaintiff to make a record capable of surviving summary judgment-not a later filed affidavit." Cowan v. Prudential Ins. Co. of America, 141 F.3d 751 (7th Cir. 1998).
*132 With this guidance from the federal courts' standard for summary judgment, we do not find that Row has produced factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. The unexplained contradictory statement contained in Row's affidavit does not raise a sufficient disagreement with the description of her prior actions so as to require submission of the case to a factfinder. There is presently before us, in the form of Row's affidavit, insufficient evidence upon which a jury could reasonably find for Row. Her deposition description of her slow movement out into the first lane of traffic demonstrates that the obstruction to her vision caused by the brush pile became immaterial. Her affidavit only partially contradicts her prior account, and she offers no plausible explanation why her memory of the accident, which she repeated at various times during her deposition, is now altered.
Finally, we also do not find that the opposition affidavit of Dr. Johnston changes the above analysis of the cause-in-fact of the accident or creates a genuine issue of material fact. Assuming Dr. Johnston's testimony is properly admissible as expert testimony under Independent Fire Ins. Co., supra, he primarily gives his opinion regarding the obstruction caused by the brush pile for a vehicle stopped at the exit of the parking lot. His opinion is stated to be based upon his review of Row's deposition, her opposition to the motion for summary judgment, and certain other depositions, the substance of which was not otherwise presented as evidence by either side in these proceedings. Apparently from Row's opposition affidavit, Dr. Johnston draws a conclusion that her inability to see any vehicle to her left, including the vehicle stopped in the outside lane, caused her to be "faced with a sudden and unexpected emergency." For the reasons set forth above, Dr. Johnston's reliance upon Row's opposition affidavit is improper and his conclusion regarding a sudden emergency is not supported by Row's deposition description of her action.

Conclusion
From our review of Row's description of the accident set forth in her deposition, we do not find that she has produced factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial. The trial court's grant of the defendants' motion for summary judgment is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.