BROWN, Chief Judge.
 

 | T This is a legal malpractice case. Plaintiff, Kirby E. Cole, is currently in prison, having pled guilty to mail fraud in federal court. As trustee for the Phillips Foundation, plaintiff breached his fiduciary duties to the Foundation via fraudulent transfers from the Foundation of property and mineral rights to himself. Defendant, C. Gary Mitchell, was plaintiffs attorney and close friend. On August 23, 2010, plaintiff filed this action against Mitchell and his insurer, CNA. In his petition, Cole makes the following allegations:
 

 If Mitchell would have advised Petitioner against self-dealing as Foundation trustee, Petitioner would have never transferred any foundation property.... As a result of the actions of Mitchell, Petitioner sustained damages including but not limited to physical incarceration
 
 *454
 
 in a federal facility, mental anguish, separation from his wife, past and present lost wages, loss of earning capacity, damage to his reputation in the community, and infliction of emotional distress.
 

 Defendants filed exceptions of prescription/peremption and no cause of action, and a motion for summary judgment. The trial court sustained the exception of per-emption regarding a 2006 sale of trust property to Cole, but overruled the exception as to the other transactions. The trial court likewise overruled defendants’ exception of no cause of action and denied their motion for summary judgment.
 

 Defendants subsequently sought supervisory review of the trial court’s rulings, which we granted to docket. For the reasons set forth below, we reverse the trial court’s ruling denying defendants’ motion for summary judgment and render judgment granting summary judgment in favor of defendants.
 

 |
 
 ^Discussion
 

 Appellate review of a grant or denial of summary judgment is
 
 de novo. Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181 (La.02/29/00), 755 So.2d 226. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La. C.C.P. art. 966(C)(2).
 

 The Louisiana Trust Code provides three general exceptions to the trustee’s duty of loyalty: transactions authorized by the settlor or trust instrument, La. R.S. 9:2206; transactions agreed to by the beneficiary, La. R.S. 9:2083; and, transactions approved by a proper court, La. R.S. 9:2085. See 11 Edward E. Chase, Jr., La. Civil Law Treatise: Trusts, § 14:4 (2d ed.2009).
 

 Cole relies upon a document drafted by Mitchell and signed by Cole as trustee on February 28, 2006, in which the Foundation granted Cole unlimited authority to buy and sell property on behalf of the Foundation. This document was an extracted portion of the Phillips Foundation’s Board |sof Trustees minutes for a plan for reorganization that authorized Cole as trustee to buy, sell, grant option, encumber, lease movable or immovable property on behalf of the trust “in any manner he sees fit, upon and on such terms and conditions and for such prices and consideration as he in his sole discretion deems advantageous to the corporation.”
 

 On the same day that this authorization instrument was executed, February 28, 2006, the Phillips Foundation sold to Cole 37 acres of real estate owned by the Foundation for $56,607. The cash sale deed was prepared and witnessed by Mitchell and signed by Cole for the Foundation as seller. Cole and his wife also signed as the purchasers. Significantly, the purchase price of $56,607 was not paid.
 

 On November 7, 2007, Cole sold the 37 acres he bought from the Foundation to a third person for $190,000, kept the proceeds and reserved the mineral rights to himself and his wife.
 

 On June 18, 2008, following negotiations, Cole reached an agreement for an oil and
 
 *455
 
 gas lease for a $15,000 per acre signing bonus and a 25% royalty on future production for the Foundation’s 169 acres and for Cole’s 37 acres. However, on June 30, 2008, the Phillips Foundation, acting through Cole, sold to Cole and his wife the mineral rights to 85 of the Foundation’s 169 acres for the stated sale price of “$10 and good and valuable consideration.” Again, nothing was paid by Cole.
 

 Thereafter, on July 16, 2008, Cole, acting as trustee of the Foundation, executed an oil and gas lease for approximately 55 acres still owned by the Foundation for $834,450. Contemporaneous therewith, Cole ^executed an oil and gas lease for the other 122 acres on behalf of himself and his wife individually for $1,850,715.
 

 It is alleged that Mitchell prepared the documents necessary to accomplish the transactions.
 

 La. R.S. 9:2206 provides that:
 

 A. The trust instrument may relieve the trustee from liability, except as provided in Sub-sections B and C of this section.
 

 B. A provision in the trust instrument is not effective to relieve the trustee from liability for breach of the duty of loyalty to a beneficiary or for breach of trust committed in bad faith.
 

 C. A provision in the trust instrument is not effective to relieve the trustee from liability if it is inserted as a result of an abuse by the trustee of a fiduciary or confidential relationship to the set-tlor.
 

 Comments under this article state that: This section is based upon the Restatement of Trusts 2d, Sec. 222, and renders ineffective a provision of the trust instrument that would relieve the trustee from breach of the duty of loyalty, as well as one that would relieve the trustee from liability for a breach of trust committed in bad faith. The Restatement of Trusts 2d renders ineffective a provision that would relieve the trustee from liability for a breach of trust committed intentionally or with reckless indifference to the interest of a beneficiary or from liability for a profit derived by the trustee from breach of trust. This section uses the term “bad faith” instead of the language of the Restatement because it is more explicit and meaningful.
 

 In 2009, a federal grand jury began investigating Cole’s actions with regard to the trust property, and the U.S. Attorney subsequently charged Cole with mail fraud. On November 6, 2009, Cole pled guilty as charged. In the extraordinarily detailed
 
 Boykin
 
 colloquy,
 
 [1]
 
 Cole explicitly admitted | sthat the government had enough evidence to prove that he had the specific intent to defraud with regard to these transactions.
 

 The Court: There are certain essential elements for the crime of mail fraud that must be met by the Government. Under Section 18 of the U.S.Code, Section 1341, it is a crime for anyone to use the mail in carrying out a
 
 *456
 
 scheme to defraud. To be found guilty of this crime, Mr. Cole, the Government has to prove each of the following essential elements beyond a reasonable doubt: First, that you knowingly created a scheme to defraud as described in the indictment; second, that you acted with a specific intent to defraud; third, that you mailed something or caused another person to mail something through the United States Postal Service or a private or commercial interstate carrier for the purpose of carrying out the scheme; and fourth, that the scheme to defraud employed false material representations. That, from a legal point, is what the Government has to prove if it went to trial. Here’s my question. If the Government went to trial against you, could they prove those four essential elements against you?
 

 Cole: Yes, sir.
 

 The Court: Could they prove each of those elements beyond a reasonable doubt?
 

 Cole: Yes, sir.
 

 [[Image here]]
 

 The Court: Are you willing to plead guilty to [mail fraud] because you are in fact guilty as charged?
 

 Cole: Yes, sir.
 

 Subsequently, the federal judge sentenced Cole to serve 20 months of incarceration in a federal facility (a downward departure from the federal | (¡guidelines’ recommendation) and ordered him to repay just over $2 million to the Foundation.
 

 Although evidence may not be considered on the exception of no cause of action, it certainly may be considered on a motion for summary judgment. In support of their motion for summary judgment, the defendants submitted Cole’s guilty plea colloquy wherein he admitted that he intended to commit fraud by his actions or scheme. This is where the “unclean hands” doctrine clearly operates, because that doctrine requires the consideration of evidence. Cole is estopped from arguing that he did not have the intent to commit fraud because of his contrary admission in the criminal case. Once the intent to defraud is shown, then Cole cannot prove that his attorney’s advice, whatever it may have been, caused his subsequent damages. Therefore, there are no remaining material issues of fact.
 

 Although Cole’s petition does not state his failure to pay consideration for the foundation’s property that he transferred to himself, the transcript of Cole’s guilty plea in federal court and his presentencing memorandum, attached in support of defendants’ motion for summary judgment and plaintiffs response, respectively, reflect such. This failure to pay led to Cole’s pleading guilty to mail fraud. Cole’s alleged damages are the direct result of his guilty plea and sentence.
 

 Cole was the trustee of the Phillips Foundation. Not only did he sell Foundation property to himself, he never paid the stated consideration to the Foundation and he greatly profited from the subsequent sale of the property and leasing of the mineral rights. Cole continuously alleges that Mitchell | informed him that he could “do anything he wanted;” however, there is no specific allegation that Mitchell told Cole that he could take Foundation property and not pay for it. Further, the record shows that a $15,000 lease signing bonus had been negotiated by Cole for the Foundation’s acreage two weeks before Cole, acting as a trustee of the Foundation, transferred the mineral rights to 85 acres of the Foundation’s property to himself, and four weeks before he executed the oil and gas lease on those 85 acres. It
 
 *457
 
 is due to these acts that Cole was charged with, and ultimately pled guilty to, mail fraud. As such, the existence of the damages set forth by Cole are the direct result of his specifically intended and knowingly created scheme to defraud.
 

 The common law doctrine of
 
 in pari delicto,
 
 a corollary of the “unclean hands” doctrine, is a mechanism by which a plaintiff is precluded from recovery as a result of plaintiffs own participation in the tortious conduct.
 
 See Wooley v. Lucksinger,
 
 09-0571 (La.04/01/11), 61 So.3d 507. In
 
 Rhodes v. Miller,
 
 189 La. 288, 297, 179 So. 430, 432 (La.1938), the Louisiana Supreme Court stated:
 

 The courts recognize the rule that every suitor who seeks relief at their hands must himself be free from any unlawful or inequitable conduct with respect to the matter or transaction in question. This rule is known in equity as the rule of ‘clean hands.’
 

 The court must apply the rule not because it is a matter of defense, but because it is against public policy to hear the case if the unconscionable character of the matter or transaction be established. The court acts for its own protection rather than for the protection of the defendant.
 

 Although Cole’s damages result from his criminal charges and plea, he would nonetheless be estopped from recovering damages as a result of | Shis own conduct. As previously stated, Cole alleges that Mitchell told him that as trustee he could “do anything he wanted” and relied upon the document drafted by Mitchell granting him (Cole) the authority to buy and sell property at his sole discretion to support his contention. A trust instrument may not relieve liability for a breach of trust committed in bad faith. La. R.S. 9:2206. Further, the instrument specifically states that he must deem the terms and conditions of the actions he performs on behalf of the Foundation to be advantageous to the Foundation. Regardless of whether Mitchell prepared the documents for Cole to execute and/or failed to advise him against self-dealing, there are no grounds for Cole to argue that, after having negotiated a $15,000 per acre mineral lease signing bonus and 25% royalty on future production for the Foundation, he deemed that transferring the mineral rights to 85 acres to himself for “$10 and other good and valuable consideration” would be advantageous to the Foundation. Cole never paid the Foundation any consideration, but he did profit $1,250,000 on the 85 acres alone. This act, among others, was in bad faith and not the result of Mitchell failing to advise Cole of the prohibitions against self-dealing; it was, as stated by Cole’s own attorney, “a dishonest, selfish and illegal betrayal of the trust that had been placed in him as trustee....”
 
 [2]
 

 As a result of our finding that the trial court erred in failing to grant defendants’ motion for summary judgment, we preter-mit discussion of ^defendants’ assignments of error regarding the trial court’s overruling its exceptions of peremption and no cause of action.
 

 Conclusion
 

 We reverse that portion of the trial court’s judgment denying defendants’ motion for summary judgment. Defendants’ motion for summary judgment is hereby granted, and all claims of plaintiff are dismissed with prejudice. Costs are assessed to plaintiff.
 

 [1]
 

 . A plea of guilty is more than a confession, it is itself a conviction, supplying both the evidence and verdict. All that remains is judgment and punishment. Like a confession, the plea of guilty is acceptable only when based on a reliable determination by a trial court that an accused knows and voluntarily waives his constitutional rights. On review, the vol-untariness of a guilty plea cannot be presumed, but must be shown from the record of the proceedings. Thus, the prosecutor must establish, on the face of the record, that an accused was advised of his constitutionally guaranteed rights which he then affirmatively waived.
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969);
 
 State v. Bradford,
 
 627 So.2d 781, (La.App. 2d Cir.1993).
 

 [2]
 

 . Stated in a memorandum for a downward departure from sentencing guidelines.