STANLEY R. PALOWSKY, III

VERSUS

W. BRANDON CORK, ANTHONY WHITE,
OHC SERVICES, L.L.C. AND ALTERNATIVE
ENVIRONMENTAL SOLUTIONS, INC.

NO. 21-CA-435

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FOURTH JUDICIAL DISTRICT COURT
PARISH OF OUACHITA, STATE OF LOUISIANA
NO. 13-2059, DIVISION "L"
HONORABLE RONALD D. COX, AD HOC, JUDGE PRESIDING

March 16, 2022

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and Hans J. Liljeberg

<u>**REVERSED AND REMANDED**</u>
    **HJL**
    **RAC**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
STANLEY R. PALOWSKY, III AND ALTERNATIVE ENVIRONMENTAL
SOLUTIONS, INC.
    Joseph R. Ward, Jr.
    Sedric E. Banks
    Stacy R. Palowsky

COUNSEL FOR DEFENDANT/APPELLEE,
ANADARKO PETROLEUM CORPORATION
    R. Keith Jarrett
    Tiffany D. Davis
    Alexander J. Baynham

**LILJEBERG, J.**

Plaintiffs, Stanley R. Palowsky, III and Alternative Environmental Solutions, Inc. ("AESI"), appeal the trial court's judgment granting a summary judgment motion filed by defendant, Anadarko Petroleum Corporation ("Anadarko"), and dismissing AESI's claims for damages against Anadarko, with prejudice, based on is application of the doctrine of unclean hands.[1]  Anadarko alleges that the alleged fraudulent conduct of AESI's president, W. Brandon Cork, must be imputed to AESI and therefore, AESI cannot recover against it due to its unclean hands.  In granting the motion, the trial court reasoned that as a matter of public policy, the unclean hands doctrine permits courts to bar all relief to plaintiffs who have engaged in unlawful or inequitable conduct with respect to the matter or transaction at issue.

On appeal, plaintiffs contend the trial court erred by failing to recognize that the unclean hands doctrine is an equitable doctrine that should only be applied to claims seeking equitable relief – not to their claims seeking damages resulting from the defendants alleged fraudulent conduct.  Plaintiffs further contend that applying the unclean hands doctrine violates the provisions of La. C.C. art. 2323, which requires the determination of fault of all persons contributing to the loss, even when both the plaintiff and defendant engage in intentional conduct.  Anadarko argues, on the other hand, that the unclean hands doctrine is not and has never been limited to claims for equitable relief, and cites to cases applying the unclean hands doctrine to bar claims seeking damages.

---

[1] The judgment at issue was rendered by Judge Ronald D. Cox, who was appointed by the Louisiana Supreme Court to serve as an ad hoc judge in these proceedings following the recusal of all judges in the Fourth Judicial District Court for the Parish of Ouachita.  According to plaintiffs, they also filed a motion to recuse the entire panel of judges presiding at the Louisiana Second Circuit Court of Appeals.  On July 1, 2021, the Louisiana Supreme Court entered an order transferring the captioned matter to this Court based on the request of the Second Circuit's Chief Judge D. Milton Moore, III.

After conducting an extensive analysis of the jurisprudence addressing the equitable doctrine of unclean hands, we find the trial court erred by applying the doctrine to bar AESI's claims against Anadarko as a matter of law. Louisiana Supreme Court jurisprudence does not support the extension of this equitable doctrine to serve as an absolute bar to AESI's request for damages arising from its claims for fraud, conspiracy and racketeering. To the contrary, La. C.C. art. 4 instructs courts to apply equitable concepts only when no legislation or custom exists to govern a situation. The Louisiana Supreme Court declared in *Landry v. Bellanger*, 02-1443 (La. 5/20/03), 851 So.2d 943, 954, that La. C.C. art. 2323 mandates the allocation of fault even when the plaintiff and defendant have both engaged in intentional conduct. Therefore, because legislation exists to address the situation at hand, we find that even if Cork's conduct is imputed to AESI, the conduct would not serve as a bar to recovery as a matter of law, but rather would be subject to the law of comparative fault.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter has an extensive factual and procedural history outlined in detail in the First Circuit Court of Appeal's decision in *Palowsky v. Cork*, 19-148 (La. App. 1 Cir. 5/20/20), 304 So.3d 867. We provide a brief overview of the underlying facts and procedural history. AESI was a corporation engaged in environmental remediation services. Palowsky and defendant, W. Brandon Cork, were each fifty percent (50%) shareholders of AESI, and Cork served as president of the corporation. Anadarko, a company engaged in oil and gas exploration and production, contracted with AESI to remediate a site located in Wyoming through a process referred to as soil shredding, which involves treating and replacing contaminated soil. AESI engaged defendant subcontractor, OHC Services, LLC ("OHC"), to work on the site in Wyoming. OHC further subcontracted with

defendant, TP Environmental and Pipeline Services, LLC ("TP Environmental"), to assist in providing the remediation services.

Palowsky originally filed this matter as a shareholder derivative action on behalf of AESI against Cork, and also filed claims against OHC, and its managing member, Anthony White. Palowsky alleged that in 2012, he discovered that Cork and other named defendants were engaged in a fraudulent conspiracy to overbill Anadarko for environmental work and skim money from the project. He alleged that Cork used the money he received from the scheme to fund a separate company he formed with White to compete against AESI. Palowsky alleged that as a result of the fraudulent scheme, Anadarko removed AESI from ongoing and future remediation projects and caused AESI great financial loss. In a second supplemental and amending petition, Palowsky added TP Environmental and its employee/officer, Michael L. Holder, as defendants.

In a third supplemental and amending petition, Palowsky added AESI as a plaintiff, and also added Anadarko and its employee, Dana E. Howard, as defendants. Plaintiffs alleged that Howard was involved in the fraudulent scheme and asserted claims for conspiracy to commit fraud, racketeering, and aiding and abetting defendants in committing fraud, intentional breach of fiduciary duty and racketeering. Plaintiffs alleged that Anadarko was vicariously liable for Howard's actions.

Anadarko filed an exception of no cause of action alleging that plaintiffs could not establish vicarious liability and opposed plaintiffs' request for leave to file a fourth supplemental and amending petition to add additional claims against Anadarko. The trial court sustained the exception and denied plaintiffs leave to amend. In *Palowsky*, *supra*, the First Circuit affirmed the trial court's judgment sustaining the exception of no cause of action and prohibiting plaintiffs from adding new causes of action against Anadarko, but granted plaintiffs leave to

amend their petition to allege additional facts "demonstrating how Howard's actions were in Anadarko's interest or benefitted Anadarko" in order to state a cause of action for vicarious liability against Anadarko. *Id.* at 876.

In their fourth supplemental and amending petition, plaintiffs added facts alleging that Anadarko conspired with other named defendants and agreed to allow them to overbill Anadarko for environmental remediation services in exchange for their agreement to provide reports which understated the expected costs Anadarko would incur for future oilfield remediation liabilities. Plaintiffs allege that these reports allowed Anadarko to reduce its remediation liabilities on its balance sheet and, in turn, to artificially inflate its stock price.

In response, Anadarko then filed the motion for partial summary judgment at issue before this Court, which sought to dismiss AESI's claims against it based on the doctrine of unclean hands. In its motion, Anadarko argued that it disputed plaintiffs' allegations. However, for the purposes of its request for summary judgment, Anadarko argued that even if the facts alleged in plaintiffs' fourth supplemental and amending petition were accepted as true, the doctrine of unclean hands barred AESI's claims because Cork's conduct should be imputed to AESI due to his position as a member and officer of AESI. Anadarko further argued that as a co-conspirator, AESI could not bring actions for fraud and racketeering because AESI took part in the fraudulent scheme. In their opposition, plaintiffs argued that the equitable doctrine of unclean hands did not bar AESI's claims for damages because the doctrine only applies when a party seeks equitable relief. Plaintiffs also argued that Cork's conduct should not be imputed to AESI because AESI did not benefit from his actions.

The trial court held oral argument of November 23, 2020, and took the matter under advisement. On December 3, 2020, the trial court rendered a judgment which granted Anadarko's summary judgment motion and dismissed

AESI's claims against Anadarko, with prejudice. The trial court also certified the judgment as final and immediately appealable.[2] The trial court incorporated written reasons into its judgment and found Cork's involvement in the fraudulent scheme must be imputed to AESI due to his position as a member and officer of the corporation.[3] As a result, the trial court concluded that the doctrine of unclean hands precluded AESI from recovering against Anadarko. The trial court's written reasons did not discuss or analyze plaintiffs' legal argument that the doctrine of unclean hands only applies to claims for equitable relief.

On January 28, 2021, plaintiffs filed a timely notice of appeal, which the trial court granted on February 1, 2021.

## LAW AND DISCUSSION

Plaintiffs raise the following assignments of error on appeal:

1) The trial court erred by applying the equitable doctrine of unclean hands to this case in which no equitable relief is sought.

2) The trial court erred by imputing Cork's acts to AESI, thereby finding that AESI had unclean hands and dismissing its claims.

3) The trial court erred by finding that "extensive" discovery had been done "over years" and granting Anadarko's premature motion.

4) The trial court erred by find that there were no genuine issues of material fact and granting Anadarko's motion.

Appellate courts review the granting of a summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. *Ross v. C. Adams Const. & Design*, *LLC*, 10-852 (La. App. 5 Cir. 6/14/11), 70 So.3d 949, 951. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no

---

[2] It does not appear that it was necessary for the trial court to designate the judgment as final pursuant to La. C.C.P. art. 1915(B). According to the record, the judgment resolved all claims existing between AESI and Anadarko and therefore, was final as a matter of law pursuant to La. C.C.P. art. 1915(A)(1).

[3] Both the current version (effective August 1, 2021), and prior version of La. C.C.P. art. 1918 in effect at the time the trial court entered its judgment, provide that written reasons for judgment "*shall* be set out in an opinion *separate* from the judgment." [Emphasis added.]

genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

We begin with an analysis of whether, as a matter of law, the trial court properly applied the doctrine of unclean hands, also referred to as the "clean hands" doctrine, in this matter.[4] Plaintiffs contend that this doctrine is limited to claims for equitable relief, which they do not seek. Anadarko argues, on the other hand, that Louisiana courts have never limited the doctrine of unclean hands to equitable claims.

In its brief discussion of the doctrine, the trial court claimed that "the Louisiana Supreme Court recognized the importance this doctrine has in the protection of public policy" and quoted the following from a 1928 Louisiana Supreme Court case, *Rhodes v. Miller*, 179 So. 430, 432 (La. 1938): "[t]he courts recognize the rule that every suitor who seeks relief at their hands must himself be free from any unlawful or inequitable conduct with respect to the matter or transaction in question." The trial court, however, excluded the following sentence, wherein the Supreme Court stated: "[t]his rule is known in *equity* as the rule of 'clean hands.'" *Id.* [Emphasis added.]

In *Rhodes*, the plaintiff did not seek damages, but rather sought to annul his marriage with the defendant based on a former provision in the Louisiana Civil Code (La. C.C. art. 161), that at that time, prohibited a divorced person from marrying the individual with whom he or she committed adultery under the penalty of nullity of the new marriage. The trial court granted the judgment to annul the marriage and the defendant appealed. The plaintiff and defendant in *Rhodes* engaged in an affair during the plaintiff's prior marriage and the plaintiff's first

---

[4] Though they do not assign it as a specific assignment of error, plaintiffs also argue that the trial court erred in considering the unclean hands doctrine because Anadarko did not file an answer raising the doctrine as an affirmative defense in response to plaintiffs' fourth supplemental and amending petition. We find that this argument is without merit as La. C.C.P. art. 966(A)(1) does not require a defendant to file an answer prior to filing a motion for summary judgment: "A plaintiff's motion may be filed at any time after the answer has been filed. A defendant's motion may be filed at any time."

wife obtained a divorce based on adultery. The plaintiff and defendant then went to Chicago to get married to avoid the law prohibiting their marriage. Plaintiff later filed an action in Louisiana seeking to annul his marriage to the defendant as an absolute nullity based on former Article 161. The defendant argued on appeal that the Supreme Court should deny the request to annul the marriage based on its application of "the rule of *equity* that courts will not relieve a litigant who appeals for relief with unclean hands." *Id.* at 431. The Supreme Court declined to apply the doctrine finding that the governing law rendered the marriage an absolute nullity and concluded that the object of a prohibitory law could not "be defeated by estoppel." *Id.* at 434.

La. C.C. art. 4, which provides that a court should proceed "according to equity" only "[w]hen no rule for a particular situation can be derived from legislation or custom," would still dictate the same conclusion today. In other words, when legislation exists to address the subject at hand, courts may not resort to equitable concepts to reach a decision. *See Bossier Parish School Bd. v. Pioneer Credit Recovery*, 49,525 (La. App. 2 Cir. 1/14/15), 161 So.3d 1007, 1009; *H&E Equipment Services, Inc. v. Sugar & Power International, LLC*, 16-1070 (La. App. 1 Cir. 2/17/17), 215 So.3d 446, 450.

In *City of New Orleans v. Levy*, 98 So.2d 210 (La. 1957), the Supreme Court reversed the trial court's judgment and applied the doctrine of unclean hands to deny an equitable claim seeking a mandatory injunction sought by the City of New Orleans.[5] In its reasoning, the court repeatedly emphasized that the doctrine applied to parties seeking equitable relief:

> Relative to the latter instance of discriminatory acts referred to above, it is axiomatic that while a *court of equity* endeavors to promote and enforce justice, good faith, uprightness, fairness, and

---

[5] Injunctive relief is an equitable remedy available to a plaintiff without an adequate remedy at law. *See Deer Slayers, Inc. v. Louisiana Motel and Inv. Corp.*, 434 So.2d 1183, 1188 (La. App. 1st Cir. 1983), *writ denied*, 440 So.2d 151 (La. 1983); *Coxe Property Management and Leasing v. City of New Orleans*, 19-911 (La. App. 4 Cir. 4/8/20), 294 So.3d 1098, 1107.

conscientiousness on the part of the parties who occupy a defensive position in judicial controversies, it no less stringently demands the same from the litigants who come before it as plaintiffs in such controversies. This fundamental principle is expressed in the maxim: *'He who comes into a court of equity must come with clean hands.' This doctrine universally affects the entire administration of equity jurisprudence as a system of remedies and remedial rights.*

It is likewise fundamental that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. One who has resorted to injustice, unfairness and unrighteous dealing, which it is the purpose of *courts of equity* to suppress, will appeal in vain, even though in his wrongdoing he may have kept himself strictly within the law. Manifestly, under this maxim any act which would be condemned and pronounced wrongful by honest and fair-minded men must be held sufficient to make the hands of *one who seeks equity unclean*. [Emphasis added.]

*Id*. at 218.

Following these decisions, the Louisiana Supreme Court in *Poole v. Guste*, 262 So.2d 339, 344-45 (La. 1972), questioned the application of the "common-law" doctrine of unclean hands in Louisiana's civil law system:

The defendant Gustes further contend that, even if the Poole property is due a servitude of drain by the Guste estate, the plaintiff Pooles are not entitled to the equitable remedy of injunctive relief. The defendants' argument is based upon limitations to the remedy of equity recognized in common-law jurisdictions, based on the historical use in them of injunctions by the chancery court where the damage-remedy in the regular courts was inadequate. Cf. James, Civil Procedure, Section 1.4 (1965). These doctrines are not necessarily applicable to Louisiana, with its different civilian procedural background, and where the injunction has historically been recognized as a remedy available to protect possession of property, cf. La.C.Civ.P. Art. 3663(2), including (see cases previously cited) the continued use of a servitude of drain over another's land.

The *Poole* court further observed that, though it referred to the doctrine of unclean hands in *Rhodes*, *supra*, the court nevertheless held that the plaintiff's wrongful conduct did not bar his suit to annul his marriage. *Id*. at 345, fn. 16. It further reasoned that in *City of New Orleans v. Levy, supra,* it simply held "that courts will not sanction unjust and illegal

discriminatory enforcement of zoning (Vieux Carre) ordinances and will, in those cases, refuse misuse of injunctions." *Id.*

Since *Poole,* the Louisiana Supreme Court has applied the doctrine of unclean hands, but continues to recognize the doctrine as a defense to claims seeking equitable relief. In *City of New Orleans v. Board of Directors of Louisiana State Museum*, 98-1170 (La. 3/2/99), 739 So.2d 748, 759, the Supreme Court reversed the appellate court's ruling and reinstated the trial court's judgment finding that the plaintiff was not entitled to a mandatory injunction. The court recognized that a "party who *seeks equitable relief*, must not be *pari delicto*; that is, he himself must be free from any unlawful or inequitable conduct with respect to the matter or transaction in question." *Id.* [Emphasis added.]

More recently, in *Cimarex Energy Co. v. Mauboules*, 09-1170, 09-1180, 09-1194 (La. 4/9/10), 40 So.3d 931, 945, the Supreme Court quoted the language cited above from *City of New Orleans v. Levy, supra*, regarding the equitable nature of the unclean hands doctrine and declined to find that the plaintiff violated the clean hands doctrine, or otherwise acted in bad faith, in invoking a concursus proceeding. Louisiana courts recognize that the "purpose of the concursus proceeding is equitable in nature, meaning to protect a person finding himself in possession of money which is not his from having to referee the rights of rival claimants and risk paying same to the wrong party." *Bank of Sunset & Trust Co. v. Charlot*, 614 So.2d 1386, 1388 (La. App. 3rd Cir. 1993).

We also recognize that the Supreme Court recently cited to the "clean hands" doctrine in *Maroulis v. Entergy Louisiana, LLC*, 21-384 (La. 6/8/21), 317 So.3d 316, in the context of the application of La. C.C. art. 2033. This article provides in pertinent part that "[a]n absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. ... *Nevertheless, a performance rendered under a contract that is absolutely null*

*because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null.*" Revision Comment (c) to La. C.C. art. 2033 explains that "[t]his conclusion flows naturally from the principle expressed in the traditional Roman maxim, *nemo propriam turpitudinem allegare potest* (no one may invoke his own turpitude), sometimes called the 'clean hands' doctrine. ..." Therefore, the "clean hands" doctrine discussed in *Maroulis*, is not the equitable defense at issue in the present matter, but rather the law codified in La. C.C. art. 2033, applicable to absolutely null contracts. Plaintiffs have not alleged a breach of contract claim against Anadarko and Anadarko does not cite to the language in La. C.C. art. 2033 as the basis for its unclean hands defense.[6]

Based on the foregoing, we do not find that the Louisiana Supreme Court has applied, or signaled an intent to apply, the equitable doctrine of unclean hands to causes of action such as the tort claims for damages currently at issue before this Court.[7]

We observe that Louisiana appellate courts directly addressing the legal issue before this Court have recognized that the unclean hands doctrine is an equitable concept and only applies in situations where no legislation governs the subject matter. In *H&E Equipment Services, Inc. v. Sugar & Power International, LLC*, 16-1070 (La. App. 1 Cir. 2/17/17), 215 So.3d 446, 450, the First Circuit

---

[6] Defendants also cite to a Third Circuit case, *Guilbeau v. Domingues*, 14-328 (La. App. 3 Cir. 10/1/14), 149 So.3d 825, 829, *writ denied,* 14-2283 (La. 1/16/15), 157 So.3d 1132, for its statement that "the clean hands doctrine is 'alive and well in Louisiana' and prevents a litigant from maintaining an action if he must rely, even partially, on his own illicit or immoral act to establish a cause of action." However, defendants fail to discuss that the Third Circuit made this statement in the context of its analysis of La. C.C. art. 2033. The plaintiff in *Guilbeau* admitted that she transferred stock to the defendant to protect the stock from her potential creditors. When the defendant refused to return the stock, the plaintiff sued to be declared owner of the stock. The appellate court found that the "transfer of her stock was for an illicit and immoral purpose – to shield her assets from her anticipated creditors – and that the purpose had been achieved." *Id.* at 830. Therefore, the court held that "the application of La.Civ.Code art. 2033, the doctrine of 'unclean hands,' is appropriate in this case," and concluded that the plaintiff could not reclaim her stock. *Id.*

[7] We further observe that a Louisiana federal court recently recognized that the unclean hands doctrine only applies as a defense to claims for equitable relief under Louisiana law. *See F&M Mafco, Inc. v. Ocean Marine Contractors, LLC*, 434 F.Supp.3d 428, 435, fn.6 (E.D. La. 2020) ("[The unclean hands] doctrine is a defense only to equitable claims. . . ECapital's claims are legal – not equitable. So, the unclean doctrine does not apply.")

refused to apply the doctrine of unclean hands to bar the plaintiff's claims because it was not seeking a remedy in equity, but rather seeking relief based on the law of contract. The court reasoned that the "equitable doctrine of clean hands, sometimes referred to as 'unclean hands,' mandates that '[h]e who comes into a court of *equity* must come with clean hands.'" *Id., citing Cimarex*, *supra*. The First Circuit further explained that pursuant to La. C.C. art. 4, courts may resort to equity only when "no rule for a particular situation can be derived from legislation or custom." *Id; see also Bossier*, 161 So.3d at 1009 (finding the unclean hands doctrine did not apply because the existence of positive law on the subject precluded the application of equitable concepts).

While this Court has not directly addressed the legal issue of whether the doctrine of unclean hands applies to claims other than those seeking equitable relief, we have recognized that the doctrine is a rule "known in *equity*" in *Pannagl v. Kelly*, 13-823 (La. App. 5 Cir. 5/14/14), 142 So.3d 70, 76-77. In *Pannagl*, the plaintiff sued the defendant to recover funds owed on a promissory note and the defendant asserted numerous affirmative defenses in an attempt to bar the plaintiff's recovery, including a defense based on the unclean hands doctrine. This Court recognized that the unclean hands doctrine only applies when the alleged fraud relates to the transaction being asserted as a claim or defense. *Id.* at 76-77, *citing United Financial Services of Baton Rouge, Inc. v. Guste*, 555 So.2d 561, 565 (La. App. 1st Cir. 1989).[8] This Court declined to apply the doctrine because the plaintiff's alleged fraudulent conduct arose from his efforts to hide assets from his former wife as part of their community property litigation and did not relate to the

---

[8] *United*, *supra*, involved claims for injunctive and declaratory relief to stop the release of the plaintiff's financial records by state agencies. The defendants argued that the plaintiff engaged in fraudulent conduct and that pursuant to the doctrine of unclean hands, the plaintiff did not have a right to stop the disclosure of its records. In addition to finding that the unclean hands doctrine did not apply because the alleged fraudulent conduct did not relate to the release of the records, the *United* court also determined that existing legislation prohibited the disclosure of the records and the doctrine of unclean hands could not be used to impair the force and effect of the applicable law. *Id.* at 565.

transaction at issue, the promissory note. *Id.* at 77. The parties did not raise and therefore, this Court did not address, the legal issue of whether the doctrine of unclean hands should apply to a suit seeking to recover funds due under a promissory note.

In support of its argument that the unclean hands doctrine is not limited to claims seeking equitable relief, Anadarko relies on three Louisiana appellate cases that applied the doctrine to bar the plaintiff's claims seeking damages. *See Cole v. Mitchell*, 46,546 (La. App. 2 Cir. 9/2/11), 73 So.3d 452, *writ denied,* 11-2319 (La. 12/16/11), 76 So.3d 1205, *Allvend, Inc. v. Payphone Commissions Co., Inc.*, 00-661 (La. App. 4 Cir. 5/23/01), 804 So.2d 27, and *Guillie v. Comprehensive Addiction Programs*, 98-2605 (La. App. 4 Cir. 4/21/99), 735 So.2d 775.[9] As illustrated more fully below, while these cases cite to the unclean hands doctrine, they do not consider or analyze the legal issue of whether the doctrine should serve as a basis to bar tort-based claims seeking relief in the form of damages.

First, in *Cole, supra*, the First Circuit cited to the unclean hands doctrine, but ultimately dismissed the plaintiff's claims on causation grounds. The plaintiff was a trustee for a foundation and fraudulently transferred property and mineral rights from the foundation to himself without paying consideration. After he pleaded guilty to criminal charges arising from the fraudulent transfers, the trustee sued his attorney and the attorney's malpractice insurer alleging that the attorney committed legal malpractice by failing to advise him against self-dealing. The defendants filed a motion for summary judgment seeking the dismissal of the plaintiff's claims, which the trial court denied. The *Cole* court reversed the trial court's decision and granted the summary judgment motion based on its finding that the

---

[9] The trial court and Anadarko also cite to *Lakewood Prop. Owner's Ass'n v. Smith*, 14-1376, 15-178 (La. App. 4 Cir. 12/23/15), 183 So.3d 780, *writ denied*, 16-138 (La. 2/26/16), 187 So.3d 469. However, the *Lakewood* case involved a request by the plaintiff for equitable relief in the form of an injunction.

plaintiff's illegal conduct was the cause of his damages, "and not the result of [the plaintiff's attorney] failing to advise [him] of the prohibitions against self-dealing . . . ." *Id.* at 457.

In reaching this decision, the *Cole* court first found that the plaintiff was estopped from arguing he did not have the intent to commit fraud in the legal malpractice proceedings, because he admitted to fraudulent intent in his criminal proceedings. *Id.* at 456. Based on this finding, the *Cole* court reasoned that "[o]nce the intent to defraud is shown, then [the plaintiff] cannot prove that his attorney's advice, whatever it may have been, caused his subsequent damages. Therefore, there are no remaining material issues of fact." *Id.* The *Cole* court went on to discuss the "common law doctrine of *in pari delicto*, a corollary of the 'unclean hands doctrine'" as a "mechanism by which a plaintiff is precluded from recovery as a result of plaintiff's own participation in the tortious conduct." *Id.* at 457. It also cited to the Supreme Court's discussion of the "clean hands" doctrine in *Rhodes*, *supra*. Though the *Cole* court mentioned the concept of unclean hands and recognized that the plaintiff would be estopped from recovering damages as a result of his fraudulent conduct, it repeatedly addressed the issues before it in terms of causation by declaring that the plaintiff's alleged damages were the "direct result of his guilty plea and sentence" and "the direct result of his specifically intended and knowingly created scheme to defraud." *Id.* at 456-57. Therefore, despite its discussion of the unclean hands doctrine, the *Cole* court ultimately granted the summary judgment motion based on its finding that the plaintiff could not prove his attorney's advice caused his damages. *Id.*

Anadarko also relies heavily on the Fourth Circuit's decision in *Allvend, supra*.[10] The appellate court in *Allvend* reversed the trial court's judgment and

---

[10] The trial court also cited to *Allvend* in its reasons for judgment, but did not analyze or discuss the application of the unclean hands doctrine in the case.

applied the unclean hands doctrine to bar claims for damages arising from the defendants' alleged conspiracy to deprive the plaintiff of its contractual rights and future profits through fraud. 804 So.2d at 33. The *Allvend* court did not discuss whether it was appropriate to apply the equitable doctrine of unclean hands to a fraud claim seeking damages. In fact, its entire discussion of the doctrine was limited to the following two sentences:

> The clean hands doctrine is recognized as a defense in Louisiana. A person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part. *Guillie v. Comprehensive Addict. Programs*, (La. App. 4 Cir. 4/21/99), 735 So.2d 779 (sic).

*Id.* at 31.

The *Guillie* case cited by the *Allvend* court also provides little guidance on the appropriate scope of application of the unclean hands doctrine in Louisiana. Just as in the *Cole* case, the *Guillie* court ultimately dismissed the plaintiffs' claims on causation grounds. Furthermore, all of the caselaw the *Guillie* court cited to regarding the application of the unclean hands doctrine was from other states, primarily Michigan and Iowa. The plaintiffs in *Guillie* brought claims for malpractice and negligence against the defendants claiming they failed to properly diagnose the plaintiff's psychiatric disorders and allowed him to leave their facility without receiving proper treatment. After leaving the facility, the plaintiff stole money from his employer which resulted in his termination. The trial court granted the defendants' summary judgment motion and dismissed the plaintiffs' claims.

On appeal, the Fourth Circuit recognized that the defendants may have breached a duty to properly diagnose the plaintiff. *Guillie*, 735 So.2d at 778. However, it affirmed the trial court's judgment to dismiss the plaintiff's claims based on its finding that the plaintiff's theft was a "superceding intervening cause" of his injury that precluded his recovery against the defendants. *Id.* at 779. After

discussing causation, the appellate court cited to the general proposition that an individual is precluded from recovering when the claim is based on his/her illegal or immoral act. *Id.* The *Guillie* court relied primarily on similar malpractice cases rendered by courts in Michigan and Iowa to support its application of this common law concept to completely bar the plaintiffs from recovering against the defendants. *Id.* at 779.

We disagree with the application of the doctrine of unclean hands in these cases to the extent they rely on an equitable concept when there is express law governing the matter at issue. "Louisiana embraces a broad civilian concept of 'fault' that encompasses any conduct falling below a proper standard, including intentional torts." *Landry*, 851 So.2d at 949. Louisiana's comparative fault statute, La. C.C. art. 2323, eliminated contributory negligence as a complete bar to a plaintiff's recovery and instead provides for the application of comparative fault to reduce a plaintiff's recovery in an action for damages. *See Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1132-33 (La. 1988). Section A provides as follows:

> In any *action for damages where a person suffers* injury, death, or *loss*, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. [Emphasis added.]

La. C.C. art. 2323(B) states that "[t]he provisions of Paragraph A shall *apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability,* regardless of the basis of liability."

[Emphasis added.] [11] La. C.C. art. 2323 (C) provides that a *negligent* plaintiff's recovery of damages shall not be reduced if he suffers loss partly due to an intentional tortfeasor. However, in *Landry,* 851 So.2d at 954, the Louisiana Supreme Court held La. C.C. art. 2323(C) does not apply when a plaintiff is also found to have engaged in intentional conduct and further explained that the fault of intentional actors in such a scenario can be compared pursuant to La. C.C. art. 2323(A):

> In the face of the silence of La. C.C. art. 2323(C) regarding how to address the comparative fault of two intentional actors, we can extrapolate from paragraphs A and B of La. C.C. art. 2323 that the fault of the intentional actors can be compared. In the instant case, the plaintiff's conduct was not merely negligent, but intentional, and therefore the provisions of Section C are inapplicable.

*Id.*; *see also Martinez v. Wilson*, 19-17 (La. App. 1 Cir. 9/27/19), 287 So.3d 27, 32 (". . . when the plaintiff and defendant are both intentional actors, La. C.C. art. 2323(C) is inapplicable and the fault of the intentional actors may be compared.")[12]

Therefore, even assuming that Cork's intentional conduct is imputed to AESI, the comparative fault rules apply. Considering the foregoing, we find that the trial court erred in applying the equitable doctrine of unclean hands as a complete bar to AESI's claims for damages against Anadarko, when laws governing comparative fault address the situation. Because we find that the doctrine of unclean hands is not applicable to bar AESI's claims against Anadarko,

---

[11] We recognize that some controversy may exist as to whether La. C.C. art. 2323 applies only to tort claims. *See Justiss Oil Company, Inc. v. Oil Country Tubular Corporation*, 15-1148 (La. App. 3 Cir. 4/5/17), 216 So.3d 346, 357, *writ denied*, 17-747 (La. 10/9/17), 227 So.3d 830. In *Merlin v. Fuselier Construction, Inc.*, 00-1862 (La. App. 5 Cir. 5/30/01), 789 So.2d 710, 717, this Court recognized that the law of comparative fault established in La. C.C. art. 2323 may only be asserted in a tort action. Regardless, our review of the petition and allegations contained in the record in the present matter indicate that plaintiffs seek damages based on the alleged fraudulent and tortious conduct of defendants and are therefore rooted in tort.

[12] Anadarko also argues in a footnote that because plaintiffs allege that the defendants conspired to commit intentional acts, as an alleged intentional actor, AESI is also a solidary obligor pursuant to La. C.C. art. 2324, if Cork's action are imputed to AESI. Anadarko contends that this further supports its argument that AESI's claims must be dismissed. We disagree. La. C.C. art. 2323(A) requires the determination of the degree of percentage of fault of all persons causing or contributing to the loss, including solidary obligors. *See Dileo v. Horn*, 15-684 (La. App. 5 Cir. 3/16/16), 189 So.3d 1189, 1207. La. C.C. art. 1804 provides that "[a]mong solidary obligors, each is liable for his virile portion." Further, La. C.C. art. 1905 provides that "[i]f a solidary obligor becomes an obligee, confusion extinguishes the obligation only for the portion of that obligor." Accordingly, even if Cork's intentional conduct as a conspirator is imputed to AESI, we do not find that AESI's claims are completely extinguished as a matter of law.

we pretermit discussion of the other assignments of error raised by plaintiffs and do not express an opinion as to these other issues.

**<u>DECREE</u>**

Accordingly, we reverse the trial court's December 3, 2020 judgment, which granted Anadarko's motion for partial summary judgment and dismissed AESI's claims against Anadarko based on the doctrine of unclean hands and remand for further proceedings.

**<u>REVERSED AND REMANDED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 16, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 21-CA-435

## E-NOTIFIED

OTHER (CLERK)
HONORABLE RONALD D. COX (DISTRICT JUDGE)
JOSEPH R. WARD, JR. (APPELLANT)     SEDRIC E. BANKS (APPELLANT)     STACY R. PALOWSKY (APPELLANT)
ALEXANDER J. BAYNHAM (APPELLEE)     R. KEITH JARRETT (APPELLEE)     THOMAS M. MCEACHIN (APPELLEE)

## MAILED

THOMAS G. ZENTNER (APPELLEE)       THOMAS H. FIELDS, III (APPELLEE)   CHRISTOPHER T. VICTORY (APPELLEE)
ATTORNEY AT LAW                    CURATOR AD HOC                     ATTORNEY AT LAW
1507 ROYAL AVENUE                  405 ROSELAWN AVENUE                501 TEXAS STREET
MONROE, LA 71201                   MONROE, LA 71201                   SUITE 300H
                                                                      SHREVEPORT, LA 71101

TIFFANY D. DAVIS (APPELLEE)        JOELLE F. EVANS (APPELLEE)
ATTORNEY AT LAW                    ATTORNEY AT LAW
701 POYDRAS STREET                 909 POYDRAS STREET
SUITE 5000                         SUITE 1600
NEW ORLEANS, LA 70139-5099         NEW ORLEANS, LA 70112