STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-765


THIND ENTERPRISES, LLC, ET AL.

VERSUS

EMPLOYERS MUTUAL CASUALTY COMPANY, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20154282
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell, and D. Kent Savoie, Judges.


**AFFIRMED**


Cooks, J. dissents and assigns written reasons.

**Timothy Kevin Reynolds**
**Reynolds Law Firm, LLC**
**315 S. College, Ste 101**
**Lafayette, LA 70503**
**(337) 593-0344**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Thind Enterprises, LLC**
    **Jaswinder Singh Thind**
    **Jaswinder Kaur Thind**

**Sean P. Mount**
**Attorney at Law**
**755 Magazine St.**
**New Orleans, LA 70130**
**(504) 581-5141**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Employers Mutual Casualty Company**
    **EMC Property & Casualty Company**
    **Randy's Candy & Fundraising Co, Inc.**

**Bryce M. Addison**
**Attorney at Law**
**755 Magazine St.**
**New Orleans, LA 70130**
**(504) 581-5141**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Employers Mutual Casualty Company**
    **EMC Property & Casualty Company**
    **Randy's Candy & Fundraising Co, Inc**

**SAVOIE, Judge.**

Plaintiffs, Thind Enterprises, LLC, dba, More 4 Less Gold, Jaswinder Singh Thind, and Jaswinder Kaur Thind, appeal the summary judgment dismissal of their claims against Defendants, Employers Mutual Casualty Company, EMC Property & Casualty Company, and Richard's Candy & Fundraising Company ("Richard's"), arising out of Defendants' alleged negligence in connection with a fire that caused damage at a convenience store. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of September 1, 2014, a fire broke out at a More 4 Less convenience store located in Lafayette, Louisiana. The store was owned by Thind Enterprises, LLC, which was wholly owned by Jaswinder Singh Thind and Jaswinder Kaur Thind (collectively, "Plaintiffs").

Inside of the store was a countertop with a row of side-by-side drink dispensers, including a soda machine, Icee machine, slush machine, and two coffee machines. According to Plaintiffs, the fire originated from the slush machine, which was owned and serviced by Richard's.

On August 31, 2015, Plaintiffs filed a Petition seeking damages against Richard's, as well as Richard's insurers. Plaintiffs alleged in their Petition that the fire was caused by Richard's negligence, including providing a defective slush machine, failing to properly maintain the slush machine, and/or breaching its obligations to provide a safe and fully operational frozen drink machine for use in the convenience store.

Prior to Plaintiffs filing suit against Defendants herein, Plaintiffs' insurer, Great Lakes Reinsurance ("Great Lakes"), filed a separate action seeking

subrogation of payments it had made to Plaintiffs. That case was eventually dismissed following a settlement in April or May 2019. On May 6, 2019, an employee of Great Lakes authorized the company who had secured and was storing the slush machine to discard it, and the slush machine was discarded accordingly in a landfill. According to Plaintiffs, the machine was discarded without knowledge of Plaintiffs or counsel involved in the litigation.

On July 6, 2020, Defendants filed a Motion for Summary Judgment seeking dismissal of Plaintiffs' claims. Therein, they argued that Plaintiffs had insufficient evidence to satisfy their burden of proving causation as there was no evidence indicating that a defect in the machine caused the fire, or that any actions or inactions on the part of Richard's caused the fire. In support of their motion Defendants submitted, *inter alia*, the October 22, 2019 deposition of Kurt Myers, who was an investigator hired by Great Lakes to determine the cause and origin of the fire. Defendants also included the exhibits attached to Mr. Myers' deposition, including Mr. Myers' report and a report from Mr. Terrance Gahn, the investigator from the Lafayette Fire Department.

Defendants pointed out that that neither Mr. Gahn nor Mr. Myers were able to determine the specific cause of the fire and that they concluded only that the fire originated from the slush machine. Specifically, Mr. Gahn concluded in his report:

> On September 2, 2014, digital images were retrieved of the fire originating at what appears to be the lower area of the Slush Puppy Dispenser at 01:29 a.m. The machine can be seen running prior to a small flame being observed at the lower level of the dispenser followed by brief intensity of the flame. The flame then is observed to decrease in intensity. Several minutes later the intensity of the flame again increases until the Slush Machine is totally involved in fire. . . .
>
> With all currently know information considered, . . . the cause of the fire was accidental with the fire originating at the Slush Puppy

Machine. However, the sequence of events which led to the ignition of the machine was not determined.

Mr. Myers' September 10, 2014 report stated that he travelled to the store on September 4, 2014, to examine the structure. The report stated that he met Mr. Thind at the store on September 8, 2014, and that, while the cold coffee machine adjacent to the slush machine was ruled out as the cause of the fire, it was "secured for further examination if deemed necessary." Mr. Myers' report also indicated that in reaching his conclusions, Mr. Myers relied on both his examination of the scene, as well as his review of video surveillance secured from the Lafayette Fire Department and post-fire photographs.

Mr. Myers provided the following conclusion in his report: "Based on evidence as observed and on information obtained during my on-site examination of the structure, I conclude the fire originated at the slush machine due to a malfunction of the slush machine. Further examination by an engineer would be required to determine the exact cause of the malfunction."

Mr. Myers testified in his deposition that he was a senior forensics fire investigator for the fire cause investigation department of SEAL Corporation and he was hired by Great Lakes' claims management company as an origin and cause expert. Mr. Myers stated that he was not a mechanical engineer or a products engineer.

Mr. Myers explained generally that in investigating a fire, once he determined the origin of the fire, he would then determine the cause of the fire if he could. He further explained that when there is evidence of electrical activity or damage at the product or location of the fire, either the electrical damage could

3

have been the result of the fire, or it could have been the cause of the fire, and that an electrical engineer is needed to make that determination.

Mr. Myers also indicated that after watching the surveillance video, he determined that the fire came from the "[f]ront bottom" of the machine, but that he did not know how the fire came out from underneath the machine. He further testified that he assumed some electrical energy was involved, but that he did not know where the electrical wiring in the slush machine was. He also stated that he did not document evidence of any "arcing" in his report, which he defined as "[a] momentary flash of light of high temperature" that could either be a source of a fire, or collateral damage from a fire that originated from somewhere else.

With respect to the cold coffee machine immediately adjacent to the slush machine, Mr. Myers testified that it was "[t]he other item that concerned [him,]" as it was the only other thing in the area "[t]hat had any type of heat patterns that would be consistent with . . . an area of origin or point of origin." The coffee machine has since been discarded. Mr. Myers further testified:

> I think that I secured the coffee machine in an abundance of caution. Even though I felt like the point of origin was the Slushy machine, I thought I went the extra mile securing the coffee machine because it was a slight possibility that there could have been a problem with the coffee machine. Even though I knew there wasn't, I secured it anyway.

Mr. Myers also testified consistently with the conclusions in his report. He stated that he determined the slush machine as the origin of the fire, and the following colloquy took place with respect to what caused the fire:

Q    So the actual cause of the fire was not determined?

A    Just identified as a malfunction in the machine that caused the fire, but the exact cause of the malfunction was not determined.

Q    Well, there can be many different reasons why a product might malfunction; is that correct?

A    Yes, but it -- the machine actually broke out in the fire, and then, you know, -- but what caused it to break out into fire, at this point, I don't know.

. . . .

A    . . . I conclude that the fire originated at the Slush machine due to a malfunction of the Slush Machine.

Q    But you don't know what the malfunction would have been?

A    I left that up to an engineer.

. . . .

Q    I'm just asking if there's a reasonable possibility it did not start inside of that machine, that it malfunctioned?

A    Not based on what I saw in the video footage.

Plaintiffs then submitted an opposition to Defendants' motion. Therein, they argued that there was sufficient evidence to establish the fire originated from the slush machine due to a malfunction of the machine. They further argued that Mr. Thind's report to a Richard's employee several days prior to the fire that the slush machine was not freezing properly, and Richard's failure to fix the slush machine prior to the fire, is evidence of a defect in the machine, and sufficient to support a finding of negligence on the part of Richard's.

In support of their opposition, Plaintiffs attached excerpts from Mr. Thind's deposition and the exhibits attached thereto, as well as Mr. Myer's deposition and attached exhibits, and an affidavit of Mr. Myers with attached exhibits, including his report and all attachments, which included a copy of surveillance video footage of the fire utilized in connection with his report.

According to Mr. Thind, he and his wife built the More 4 Less store "from scratch" and that it opened in July 2014. Mr. Thind testified that he had experience

with owning various other convenience stores and noted that they a "[l]ot of time had this issue" of slush machines not freezing, "but they keep running it[,]" and no company ever told him to unplug the machine when that happened. He further testified that at a different store he owned, the fruit juice machine, which was similar to the slush machine, would sometimes not freeze, so he had to call the owner of that machine to come and fix it; however, he did not know what was done to fix the machine. Mr. Thind explained that this was a common problem with slush machines, the "[m]achines always goes down[,]" and "[f]rom time to time, they have a problem and they come fix it."

With respect to the slush machine at issue, Mr. Thind indicated that during the week prior to the fire, he contacted Lane, a Richard's employee who installed the slush machine, because the slush machine was not freezing on the right side. According to Mr. Thind, Lane came to the store and fixed it, since Lane was living nearby. Mr. Thind said that he did not know how long it took Lane to fix the machine, but that once it was fixed, it immediately started working. Mr. Thind testified that he did not know what was done to fix the machine.

Mr. Thind then texted Lane on Saturday, August 30, 2014, stating that he was having the same problem with the slush machine, and Lane responded saying he was out of town and would go by the store on Monday, September 1, 2014. According to Mr. Thind, Lane did not fix the slush machine prior to the fire. According to the video footage, the machine was seen running immediately prior to the fire. Mr. Thind also agreed that no one ever suggested to him that the slush machine's failure to freeze on one side had anything to do with the fire starting.

On October 14, 2021, Defendants filed a reply memorandum in support of their motion and included objections to the following exhibits Plaintiffs submitted,

6

arguing that the exhibits were not properly authenticated: Exhibit Numbers 1 and 2 attached to Mr. Thind's deposition, which consisted of a hand-drawn diagram and hand-labeled photographs; Exhibit Numbers 3, 4, 5, 6a, 6b, 6c, and 7 attached to Mr. Myers' deposition, which included various photographs purportedly of the subject fire; and Exhibit A to Mr. Myers' affidavit, which is the purported surveillance video from the night of the fire.

Defendants further argued that, regardless of the appropriateness of Plaintiffs' evidence, the evidence was nonetheless undisputed that the cause of the slush machine breaking out into fire was unknown and that an examination by an engineer was required to determine the cause of the slush machine's malfunction; however, no such determination has been made, and there is no other evidence indicating what caused the fire.

Defendants also argued that there is no evidence indicating that a fire would not have occurred but for any negligence on the part of Richard's, and that, per his own testimony, Mr. Myers cannot relate any "malfunction" to any duty owed by Defendants as the cause of the "malfunction" is unknown. Defendants also noted that the fact that the machine "malfunctioned," without more, does not establish negligence on the part of Defendants.

A hearing on Defendants' motion was held October 19, 2020, before Judge Herman Clause. A judgement granting Defendants' motion and dismissing Plaintiffs' claims against them was signed by Judge Laurie Hulin on November 18, 2020. Thereafter, Plaintiffs filed a motion for new trial arguing that Judge Clause did not specifically rule on Defendants' evidentiary objections as required by La.Civ.Code art. 966(D)(2). On February 1, 2021, Judge Hulin signed an Order Granting New Trial, but noted therein that "the scope of the New Trial [was]

limited to a reconsideration of the pleadings, memoranda, evidence, and objections to evidence placed before the court at the time of the October 19, 2020 hearing."

Following a re-hearing on June 1, 2021, Judge Hulin signed a judgment on July 23, 2021, overruling all of Defendants' evidentiary objections asserted in their reply memorandum, but admitting said exhibits "solely for the purpose of the witnesses['] reliance and reference to said exhibits and not for the truth and veracity of the content of those exhibits." The judgment further granted Defendants' Motion for Summary Judgment and dismissed Plaintiffs' claims against Defendants.

In so ruling, Judge Hulin stated as follows in her oral reasons for ruling: "I don't see anything that has been presented to me that establishes a link between the malfunction and the machine, what the malfunction was, and how that links up to the debt in this case."

Plaintiffs appeal and assert the following as assignments of error (emphasis removed):

No. 1. The District Court erred by limiting the admission of Exhibit Nos. 3, 4, 5, 6a, 6b, and 6c to the Deposition of Kurt C[.] Myers rather than admitting them entirely.

No. 2. The District Court erred in finding that no issue of material fact with respect to the slush machine causing the fire.

No. 3. The District Court erred in granting the summary judgment without even addressing the evidence that Defendant, Richard's Candy, had failed to maintain the slush machine in a safe and operational condition.

## ANALYSIS

Assignment of Error No. 1:

In their first assignment of error, Plaintiffs take issue with the district court's limited admission of various exhibits attached to Mr. Myers' deposition. These

exhibits are purportedly still photographs taken from surveillance footage of the convenience store and were attached to Mr. Myers' report. Mr. Myers did not record the surveillance footage or otherwise authenticate it during his deposition. Plaintiffs argue that because Defendants questioned Mr. Myers about these photographs and attached them to his deposition, they should have been admitted into evidence "completely."

As stated by the Louisiana Supreme Court in *Trascher v. Territo,* 11-2093, p. 5 (La. 5/8/12), 89 So.3d 357, 362 (emphasis added):

> A ruling on the admissibility of evidence is a question of law and is not subject to the manifest error standard of review. Frank L. Maraist, *Louisiana Civil Law Treatise: Evidence and Proof,* Vol. 19, § 2.10, p. 36. **A party may not complain on appeal about an evidentiary ruling in the trial court unless the trial judge was given the opportunity to avoid the perceived error, and the ruling "affected" a "substantial right" of the party**. *Id.* (Citing La. C.E. art. 103(A)(1)).

At the June 1, 2021 re-hearing, Plaintiffs' counsel conceded with, rather than objected to, the district court's indication that it was going to limit the scope of the admissibility of the evidence at issue. Counsel agreed with the district court that the exhibits were being used to verify or explain Mr. Myers' opinion, rather than as being offered for the truth of the matter asserted, and that this was in line with Mr. Myers' deposition testimony. In addition, Plaintiffs do not suggest that the trial court's limited admission of these exhibits, rather than some broader scope, affected a substantial right. Therefore, we find no reversible error on the part of the district court in its limited admission of these exhibits for purposes of Defendants' motion for summary judgment.

Assignment of Error Numbers 2 and 3:

In their second and third assignments of error, Plaintiffs take issue with the merits of the district court's summary judgment dismissal of their claims. We review summary judgments rendered by a district court in accordance with the following:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363, p. 3 (La. 11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181, p. 17 (La. 3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337, p. 7 (La. 10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago*, 2003-1424, p. 5 (La. 4/14/04), 870 So.2d 1002, 1006.

*Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted).

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Row v. Pierremont Plaza*, L.L.C., 35,796, p. 13 (La.App.2d Cir. 4/3/02), 814 So.2d 124, 130-31, *writ denied*, 02-1262 (La. 8/30/02), 823 So.2d 952. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Row*, 35,796 at p. 14, 814 So.2d at 131.

*Jones v. American Alternative Ins. Corp.*, 14-367, pp. 7-8 (La.App. 1 Cir. 1/8/15), 169 So.3d 386, 392.

Plaintiffs' claims arise in negligence under La.Civ.Code art. 2317.1, which states:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

To prevail on their claims at trial, Plaintiffs are required to prove the following by a preponderance of the evidence:

(1) that the thing which caused the damage was in the defendant's custody or control, (2) that it had a vice or defect that presented an unreasonable risk of harm, (3) that the defendant knew or should have known of the vice or defect, (4) that the damage could have been prevented by the exercise of reasonable care, and (5) that the defendant failed to exercise such reasonable care. If the plaintiff fails to provide proof any one of these elements, his/her claim fails.

*Riggs v. Opelousas Gen. Hosp. Trust Auth.*, 08-591, p. 4 (La.App. 3 Cir. 11/5/08), 997 So.2d 814, 817.

In the instant case, Mr. Gahn's report, as well as Mr. Myers' report and testimony sufficiently establish that the fire originated at the slush machine.

However, the fact that a fire broke out at the slush machine, without more, is insufficient to establish that the machine had a "defect" for purposes of La.Civ.Code art. 2317.1.

> "A defect, within the meaning of Article 2317.1, is a condition or imperfection in an object that causes it to present an unreasonable risk of injury to persons exercising ordinary care." *Conner v. Kraemer-Shows Oilfield Servs., LLC*, 33 F.Supp.3d 725, 728 (W.D. La. 2014). The existence of a defect may not be inferred solely from the fact that an accident occurred; rather, a plaintiff is required to prove, by a preponderance of the evidence, the existence of a defect and that the defect caused the plaintiff's damages. *King v. Allen Court Apartments II*, 15-0858, p. 7 (La App. 1 Cir. 12/23/15), 185 So.3d 835, 840 (citing *Thompson v. BGK Equities, Inc.*, 04-2366 (La. App. 1 Cir. 11/4/05), 927 So.2d 351, 355).

*Maddox v. Howard Huges Corp.*, 19-135, p. 6 (La.App. 4 Cir. 4/17/19), 268 So.3d 333, 338.

However, there is no evidence in the record indicating that a defect in the slush machine, rather than some other external cause such as an electrical issue in the building, or improper or erroneous use by third parties, caused it to malfunction and break out into fire. The undisputed testimony of Mr. Myers establishes that an engineer is required to determine what caused the slush machine to malfunction, and Plaintiffs have not presented any such determination by an engineer. Mr. Myers' testimony that the slush machine "malfunctioned," or broke out into fire, does not mean that the slush machine itself contained a "defect" as contemplated by La.Civ.Code art. 2317.1.

Plaintiffs also rely on Mr. Thind's deposition testimony indicating that he experienced problems with the slush machine not freezing the week prior to the fire. However, there is no evidence in the record indicating whether a defect in the machine itself, or some other external cause such as user-error caused, or could have caused, the slush machine to not freeze. There is also no evidence in the

12

record suggesting that whatever caused the slush machine to not freeze could lead to a fire if not addressed, or otherwise created an unreasonably dangerous situation. Therefore, this testimony is insufficient to establish that any defect in the slush machine caused a fire as required by La.Civ.Code art. 2317.1.

On appeal, Plaintiffs further argue that summary judgment was improper because Richard's "failed to maintain the slush machine in a safe and operational condition." Again however, there is nothing in the record linking the slush machine's problems with not freezing properly to either a defect in the machine itself, or to a potential cause of the fire at issue.

After reviewing the record, we conclude that there is insufficient evidence in the record to establish Plaintiffs' burden of proving that a defect in the slush machine caused the fire; that Defendants knew, or should have known, of any such defect capable of causing harm; that the fire could have been prevented by Defendants' exercise of reasonable care, and/or that the Defendants failed to exercise any such reasonable care. Therefore, we find no error in the district court's judgment.

## DECREE

For the reasons stated above, the district court's judgment granting Defendants' motion for summary judgment and dismissing Plaintiffs' claims is hereby affirmed. Costs of this appeal are assessed to Plaintiffs, Thind Enterprises, LLC, dba, More 4 Less Gold, Jaswinder Singh Thind, and Jaswinder Kaur Thind.

**AFFIRMED.**

13

THIND ENTERPRISES, LLC

VERSUS

EMPLOYERS MUTUAL CAS. CO.

**COOKS, Chief Judge, Dissents.**

I respectfully dissent from the majority's decision to affirm the trial court's grant of summary judgment in this matter. I find this case is not ripe for summary judgment. Slush machines do not simply catch on fire unless they are defective. Plaintiffs' expert made a definitive conclusion that the fire came about as a result of some malfunction in the Slush machine. The expert, because he was not an engineer, was unable to say what was the exact cause or defect in the machine or its component parts that sparked the flames which started the fire. However, he was unequivocal in his opinion "that the fire originated at the Slush machine due to a malfunction of the Slush machine." Further, the record establishes there were problems with the Slush machine in the period leading up to and immediately prior to the fire. Mr. Thind testified the Slush machine stopped freezing on one side several days prior to the weekend of the fire and then again on the weekend of the fire. On the first occasion, a Richard's employee came out and fixed the machine, on the second occasion the same employee was out of town and said he would come by the following Monday to fix the machine. He did not tell Mr. Thind to stop using the machine. This also creates genuine issues of fact with respect to Richard's breaching its service obligations to Plaintiffs. The majority's speculation that the malfunction could have been caused by "an electrical issue in the building, or improper or erroneous use by third parties" ignores the Plaintiffs expert's definitive finding that the fire originated in the Slush machine.

Therefore, I cannot agree with the majority's affirmance of the grant of summary judgment as there was sufficient evidence in the record to raise genuine issues of material fact in this matter. I would reverse and remand for a trial on the merits.